## CARTER v BRAUNSTEIN

Docket No. 77-4559. Submitted February 6, 1979, at Detroit.—Decided March 19, 1979.

Plaintiff, Samuel Carter, a black man, was injured in a four-car collision on the Lodge Expressway. He sued defendant, Joseph Braunstein, a white man, and was granted judgment. The Wayne Circuit Court, Horace W. Gilmore, J., denied plaintiff's motion for a new trial. Plaintiff appeals alleging that the trial court erred in denying his request to inquire of prospective jurors concerning racial prejudice and erred in admitting an "ability to work" report in which the company doctor noted that no work restrictions were required. *Held:*

1. A litigant in a civil action is entitled, upon request, to ask or have asked on voir dire special questions dealing with the subject of racial prejudice where it appears that race is an issue; the mere fact that the parties are of different races, of itself, does not indicate an issue of race.

2. The doctor's notation in the report was not a diagnosis but was merely a general description of plaintiff's physical condition and, as such, the report was admissible under the business entry rule.

Affirmed.

1. TRIAL — JURORS — VENIREMEN — VOIR DIRE.

The purpose of voir dire examination of veniremen is to provide counsel an opportunity to elicit sufficient information to develop a rational basis for excluding prospective jurors either for cause or peremptorily.

2. TRIAL — VENIREMEN — VOIR DIRE — QUESTIONS CONCERNING RACIAL PREJUDICE.

A litigant in a civil action is entitled, upon request, to ask or have asked on voir dire special questions dealing with the subject of racial prejudice where it appears that race is an issue; the mere fact that the parties are of different races, of itself, does not indicate an issue of race.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 47 Am Jur 2d, Jury § 195.

*Zeff & Zeff (Harry A. Mayer* and *Edward Grebs,* of counsel), for plaintiff.

*Sullivan, Ranger, Ward & Bone* (by *Maureen Holahan),* for defendant.

Before: DANHOF, C.J., and BRONSON and BEAS-LEY, JJ.

BEASLEY, J. On October 6, 1961, while a passenger, plaintiff was injured in a four-car collision on the Lodge Expressway. After the car in which plaintiff was a passenger struck the suddenly-stopping car in front of it, defendant drove his car into the rear end of the car in which plaintiff was a passenger.

After a trial, which started on May 31, 1977, a jury awarded plaintiff judgment against defendant in the sum of $2,000. After denial of a motion for new trial, plaintiff appeals as of right, raising two issues.

First, plaintiff claims it was error to deny his request that the trial judge inquire of the jurors whether they harbored prejudice or feeling against blacks. In this case, plaintiff is black and defendant is white. The trial judge denied plaintiff's request, pointing out that the jurors indicated they had no reservations about deciding the case from the testimony. In support of his claim, plaintiff cites a criminal case, *People v Wray.*[1]

The purpose of voir dire is to provide counsel an opportunity to elicit sufficient information to develop a rational basis for excluding prospective jurors whether for cause or by peremptory challenge.[2]

---

[1] 49 Mich App 344; 212 NW2d 78 (1973).

[2] *People v Harrell,* 398 Mich 384, 388, 393; 247 NW2d 829 (1976).

Part of the problem for trial judges in conducting voir dire of prospective jurors to determine the presence of undue prejudice is that the questioning of necessity places emphasis on race which, of course, is just what a trial judge wants to avoid, namely, injection of race. For example, in *Harrell,*[3] defense counsel requested the trial judge to propound 120 questions to each prospective juror. One inevitable effect of putting 120 such questions to a prospective juror would, of necessity, place undue emphasis on differing races in the trial.

In *Ham v South Carolina,*[4] the Supreme Court held:

"The State having created this statutory framework [voir dire examination] for the selection of juries, the essential fairness required by the Due Process Clause of the Fourteenth Amendment requires under the facts shown by this record the petitioner be permitted to have the jurors interrogated on the issue of racial bias."

In *Ristaino v Ross,*[5] Ross, a black, was convicted of crimes of violence against a white security guard. The Supreme Court held that his Federal constitutional rights secured through the Fourteenth Amendment were not violated by a refusal to ask questions directed to racial prejudice. "The mere fact that the victim of the crimes alleged was a white man and the defendants were Negroes was less likely to distort the trial than were the special factors involved in *Ham"* where racial issues "were inextricably bound up with the conduct of the trial".

In *People v Wray,*[6] the trial court said:

---

[3] See fn 2, *supra.*

[4] 409 US 524, 527; 93 S Ct 848; 35 L Ed 2d 46 (1973).

[5] 424 US 589, 597; 96 S Ct 1017; 47 L Ed 2d 258 (1976).

[6] *People v Wray, supra,* p 346.

"Even though the Court noted that there was no requirement for the trial court to ask the defendant's requested questions verbatim, it was reversible error not to ask specific questions dealing with the particular subject of racial prejudice."

Although the cited cases are all criminal cases, we subscribe to the proposition that in a civil jury trial where it appears that race is an issue, a litigant is entitled, upon request, to ask or have asked special questions dealing with the particular subject of racial prejudice. While we unqualifiedly embrace this doctrine, we do not find that there was any bona fide issue of race within the civil suit for damages. The mere fact that a plaintiff is black and a defendant white does not indicate that there is necessarily an issue of race. Consequently, under these circumstances, we decline to find that it was error for the trial judge to refuse to ask specific questions of the jury relating to racial prejudice. Furthermore, the record in this case indicates that counsel for plaintiff failed to make specific written requests regarding the exact inquiries of prospective jurors that he wanted made. Counsel's oral request on the record for such an inquiry lacked specificity and was stated in an indefinite fashion.[7] Consequently, we find no error in the conduct of the voir dire in this case.

---

[7] The record indicates as follows:

"MR. MEYER: [Counsel for plaintiff] Yes, Your Honor. I would like to know—I realize this is a difficult thing perhaps for some jurors, I don't know about this jury—but I would like to know if any of the jurors have any feelings against people of the black race, whether or not—

"THE COURT (Interposing): No, I don't think we need to get into the racial matter.

"Anything else?

"MR. MEYER: I think the jury should be committed to the proposition—

"THE COURT (Interposing): They have indicated they have no reservation about deciding the case solely and completely from the sworn testimony."

Next, plaintiff alleges that the trial court erred in admitting into evidence an "Ability to Work"[8] report as part of plaintiff's employment record at Ford Motor Company. In the report, the company doctor noted that no work restrictions were required. This was not a diagnosis but was merely a general description of plaintiff's physical condition. As such, it was admissible under the business entry rule.[9]

Affirmed, with costs.

---

[8] The "Ability to Work" report was dated some eight years after the accident.

[9] MCL 600.2146; MSA 27A.2146. *Bond v Greenwood,* 34 Mich App 41; 190 NW2d 731 (1971), *Cacavas v Bennett,* 37 Mich App 599; 194 NW2d 924 (1972).