PEOPLE v DANIELS

Docket No. 117503. Submitted June 18, 1991, at Detroit. Decided
December 3, 1991; approved for publication January 29, 1992,
at 9:00 A.M. Leave to appeal sought.

Kenneth D. Daniels was convicted by a jury in the Recorder's
Court for the City of Detroit, Richard P. Hathaway, J., of
second-degree murder and possession of a firearm during the
commission of a felony. He was sentenced to consecutive terms
of thirty to fifty years' imprisonment for the second-degree
murder conviction and two years' imprisonment for the felony-
firearm conviction. The trial was the defendant's second, his
first having ended in a mistrial when the jury could not agree
on a verdict. The defendant appealed, alleging several errors.

The Court of Appeals *held:*

1. The trial judge who presided over the second trial did not
err in denying the defendant's motion to dismiss on double
jeopardy grounds. The refusal of the first trial judge to poll the
deadlocked jury for partial verdicts did not preclude his finding
that there was manifest necessity to declare a mistrial because
of the jury's failure to agree on a verdict. The protection
against double jeopardy does not require a trial court to inquire
regarding the status of jury deliberations on the included
offenses before it declares a mistrial because of a hung jury.

2. There was sufficient evidence that the defendant caused
the decedent's death, and did so with premeditation and delib-
eration, to sustain binding over the defendant on the charge of
first-degree murder.

3. The trial court did not err in denying the defendant's
motion for a directed verdict on the charge of first-degree
murder. There was sufficient proof of premeditation and delib-
eration.

4. There was no bona fide issue of race in this matter.

REFERENCES

Am Jur 2d, Criminal Law §§ 303, 528; Homicide §§ 139, 140, 151-
155; New Trial §§ 588, 590.

Former jeopardy as bar to retrial of criminal defendant after
original trial court's sua sponte declaration of mistrial—state
cases. 40 ALR4th 741.

Therefore, the trial court did not abuse its discretion in refusing to question the jury during voir dire regarding possible racial prejudice. In addition, the issue was waived because the defendant expressed satisfaction with the jury with five of his twenty peremptory challenges unused.

5. The admission of evidence of a witness' statement to the police that her husband told her that the defendant told him that the defendant was going to kill the decedent was, if error, harmless. There was ample other evidence to support the trial court's denial of the defendant's motion for a directed verdict with regard to the first-degree murder charge.

6. The second trial judge was not required to follow the rulings of the first trial judge regarding the suppression of evidence of the defendant's prior conviction of armed robbery. The failure of the second trial judge to articulate his analysis of the factors governing the admissibility of the evidence of the prior conviction was harmless error.

7. The trial court did not err in instructing the jury with regard to self-defense that it must determine whether the defendant honestly and reasonably believed that he was in danger of being killed or receiving serious bodily harm, instead of by giving CJI 7:9:01 (honest belief) as requested by the defendant.

8. The jury was properly instructed that the trial court's comments and instructions were not evidence and should not be taken as an indication of the court's opinion regarding how the case should be decided. The trial court did not so pierce the veil of judicial impartiality as to unduly influence the jury.

9. The trial court's decision to admit a bloody jacket in evidence was not an abuse of discretion. The evidence was relevant, and the prejudicial effect was balanced with the probative value of the evidence.

10. The evidence supports the trial court's score of twenty-five points under Offense Variable 4 for aggravated physical injury.

11. The trial court's failure to respond to alleged inaccuracies in the presentence report was harmless error because those inaccuracies would have had no determinative effect upon the sentence. A remand is not required.

Affirmed.

1. Criminal Law — Mistrial — Deadlocked Juries — Double Jeopardy.

Double jeopardy does not prohibit retrial in cases where a mistrial is ordered because the jury cannot agree on a verdict; an

exception to a defendant's right to have a trial completed by a particular tribunal exists where manifest necessity, including the failure of the jury to agree upon a verdict, compelled the termination of the first proceeding (US Const, Am V; Const 1963, art 1, § 15).

2. CRIMINAL LAW — MISTRIAL — DEADLOCKED JURIES — INCLUDED OFFENSES.

The protection against double jeopardy does not require a trial court to inquire regarding the status of jury deliberations on the included offenses before it declares a mistrial because of a hung jury (US Const, Am V; Const 1963, art 1, § 15).

3. CRIMINAL LAW — RETRIAL — EVIDENCE.

On retrial, a case stands procedurally as if there had been no prior trial; a trial court is not required to follow another trial court's previous evidentiary rulings.

4. HOMICIDE — SELF-DEFENSE — HONEST AND REASONABLE BELIEF OF DEFENDANT.

The killing of another person in self-defense is justifiable homicide if there is an honest and reasonable belief that the person's life is in imminent danger or that there is a threat of serious bodily harm.

5. CRIMINAL LAW — APPEAL — SENTENCING — PRESENTENCE REPORTS.

Any error incurred because of the failure of a trial court to respond to an alleged inaccuracy in a presentence report that would not have a bearing on the sentence imposed is harmless and does not require reversal or remand on appeal.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training and Appeals, and *Joseph A. Puleo,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Anne Yantus*), for the defendant on appeal.

Before: MARILYN KELLY, P.J., and WAHLS and SHEPHERD, JJ.

PER CURIAM. Defendant was charged with first-

degree murder for the killing of David Reese. David and Joann Reese had been married for 6½ years. At the time of the incident, they were separated and Joann was dating defendant. Defendant's first trial in June 1988 ended in a mistrial when the jury could not agree on a verdict. Following a second jury trial, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to a term of thirty to fifty years' imprisonment for the second-degree murder conviction, to run consecutively to the mandatory two-year term imposed for the felony-firearm conviction. Defendant appeals as of right.

Several eyewitnesses testified at trial. David had beaten Joann throughout the relationship and on the day he was killed. On the day in question, Delores Turner, the mother of Joann Reese, called defendant and asked him to come to her home and check on Joann, who had been fighting with David. When defendant first arrived, decedent and Joann were not there. He came back later, and he had a gun drawn when the door to the Turner home was opened by Joann's sister. He fired it into a refrigerator near where David and Joann were talking. Defendant and David then ran out of the house and down an alley. A second gunshot was heard. David was seen shortly thereafter with a piece of lumber and appeared to have trouble walking. Defendant continued to chase David, who sought access to a neighbor's home and left bloodstains on the porch. After calling the police, Joann came out of the house and tried to separate the men. Defendant began attempting to stab David with a knife while Joann continued to try to separate them. The two men again ran off. Joann again called the police, and when she came back out of the house,

David was lying in the grass alone. He was panting and had a very weak pulse. Defendant reappeared within five or ten minutes and dragged David down the alley and placed him under a porch. It was there that the police found him. He died later that night in the hospital. The cause of death was one gunshot wound and at least four stab wounds.

Defendant first argues that his conviction violates his double jeopardy rights. We disagree. In the course of the first trial, the jury sent two notes to the trial judge before a mistrial was declared. The first indicated that they "needed to hear the law" because they were " 'dead locked' 11 to 1." After further instruction and deliberation, the jury sent a second note: "We, the jury, are not able to reach a unanimous verdict." Defense counsel requested that the trial court poll the jurors to determine if they had reached a decision on the principal charge or any lesser offenses. The court considered and denied this request and declared a mistrial after the jury again indicated that it could not reach a verdict.

Before the second trial, defendant moved to dismiss the charges on the basis of double jeopardy, arguing that retrial on first- and second-degree murder charges was precluded because of the refusal of the first trial judge to poll the jury. Defense counsel contended that he. had spoken with jurors who indicated that they had agreed to acquit on charges of both first- and second-degree murder. The motion to dismiss was denied, in part on the basis of *People v Thompson,* 424 Mich 118; 379 NW2d 49 (1985).

The United States and Michigan Constitutions provide that no person shall be twice placed in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, § 15. Although a defendant has

a valued right to have a trial completed by a particular tribunal, which right generally prohibits retrial where a proceeding ends without the defendant's consent, an exception exists where "manifest necessity" compelled the termination of the first proceeding. *People v Thompson, supra,* p 123. Although the term "manifest necessity" lacks precise definition, it has been said to include "the failure of the jury to agree upon a verdict." *People v Wilcox,* 183 Mich App 616, 621; 456 NW2d 421 (1990). Our Supreme Court recently "decline[d] to overrule the longstanding view that double jeopardy does not prohibit retrial in cases where a mistrial is ordered because the jury cannot agree on a verdict." *People v Thompson, supra,* p 129.

The issue in this case is whether a trial court's denial of a request to poll a deadlocked jury for partial verdicts (i.e., possible verdicts on the principal charge or any included offenses) precludes a finding that there was manifest necessity to declare a mistrial. In arguing that it does, defendant candidly acknowledges the case of *People v Hickey,* 103 Mich App 350; 303 NW2d 19 (1981), which held that "[t]he protection against double jeopardy does not require a trial court to inquire as to the status of jury deliberations on the included offenses before it declares a mistrial due to a hung jury." *Id.,* p 353.

As in this case, the first jury in *Hickey* was instructed that it could return one of several possible verdicts: guilty of first-degree murder, guilty of second-degree murder, guilty of voluntary manslaughter, or not guilty. In this case, the jury was also instructed on involuntary manslaughter. Defendant contends that *Hickey* differs from this case in that in this case the jury foreperson announced an 11-to-1 split. Alternatively, defendant argues that we should disavow *Hickey.*

We do not find a meaningful distinction between the facts of this case and those in *Hickey.* In both instances the trial court was not made aware of a final decision by the jury on any of the included offenses. All that is known in this case is that the jury was deadlocked—it could have been on first-degree murder or involuntary manslaughter, or anything in between. We are not persuaded that we should diverge from the rule of *Hickey.* Accordingly, we conclude that the trial judge who presided over the second trial did not err in denying defendant's motion to dismiss on double jeopardy grounds.

Defendant next argues that the prosecution produced insufficient evidence at the preliminary examination to establish that defendant caused the deceased's death, and that he did so with premeditation and deliberation. To bind over a defendant for trial, an examining magistrate must find the commission of a felony and probable cause to believe that the defendant committed the crime. MCL 766.13; MSA 28.931. Although the magistrate need not establish guilt beyond a reasonable doubt, there must exist on the record evidence of each element of the crime charged or evidence from which the elements may be inferred. *People v Hill,* 433 Mich 464, 469; 446 NW2d 140 (1989). It is not the function of the magistrate to discharge the accused when the evidence is conflicting or raises a reasonable doubt regarding guilt. *Id.* Such questions are for the trier of fact. *Id.* At the preliminary examination, Joann Reese testified essentially in accordance with the recitation of facts above. It was also stipulated that the cause of decedent's death was one gunshot wound and at least four stab wounds. On the basis of this evidence, we conclude that there was sufficient evidence to sustain binding over the defendant on the

charge of first-degree murder. In light of defendant's rather dogged pursuit of decedent, we cannot say that there was insufficient evidence with regard to the premeditation and deliberation element to bind over the defendant. Cf. *People v Glover,* 154 Mich App 22, 25-29; 397 NW2d 199 (1986); *People v Tilley,* 405 Mich 38, 45; 273 NW2d 471 (1979).

Defendant also argues that the trial court erred in denying defendant's motion for a directed verdict on the charge of first-degree murder. When ruling on a motion for a directed verdict, the court must consider the evidence presented by the prosecutor, up to the time the motion was made, in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the charged crime were proven beyond a reasonable doubt. *People v Petrella,* 424 Mich 221, 268-269; 380 NW2d 11 (1985). We apply the same standard on review of a ruling on such a motion. See *People v Coddington,* 188 Mich App 584, 599; 470 NW2d 478 (1991).

Defendant argues that there was insufficient proof of deliberation and premeditation to send the case to the jury. This Court recently analyzed a similar claim and summed up some applicable principles:

> To constitute first-degree murder, it must be established that a defendant's intentional killing of another was deliberate and premeditated. *People v Youngblood,* 165 Mich App 381, 386-387; 418 NW2d 472 (1988). While the length of time needed to measure and evaluate a choice before it is made is incapable of precise determination, there must be some interval in which a "second look" can be contemplated. *People v Furman,* 158 Mich App 302, 308; 404 NW2d 246 (1987). Premeditation and deliberation may be inferred from the facts and

circumstances established on the record. *People v Gonzalez,* 178 Mich App 526, 532-533; 444 NW2d 228 (1989). Though not exclusive, factors which may be considered to establish premeditation include: (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted. *Id., People v Jackson,* 171 Mich App 191, 199-200; 429 NW2d 849 (1988). [*People v Coddington, supra,* pp 599-600.]

In this case, defendant arrived at the Turner residence with his gun drawn. Immediately after the door to the house was opened, he told Joann's sister to get out of the way and fired toward the decedent. Thereafter, he chased him with a gun and a knife. When Delores Turner's husband told defendant to leave decedent alone, defendant responded "get back pops. I am going to kill this mother f_____." On the basis of these facts and others recited herein, we find no error in the submission of the first-degree murder charge to the jury. *Petrella, supra.*[1]

Defendant next argues that the trial court erred in refusing, upon defendant's request, to question the jury during voir dire regarding possible racial prejudice because both defendant and the victim were black. This claim of error lacks merit. The scope of voir dire examination is entrusted to the discretion of the trial court and will not be set aside absent an abuse of discretion. *People v Furman,* 158 Mich App 302, 322; 404 NW2d 246 (1987). We find no abuse of discretion. Defendant

[1] Defendant's counsel on appeal originally argued that defendant arrived at the house at noon and then returned 12½ hours later with a gun. The transcripts seem to show that defendant first arrived at midnight and returned with a gun ½ hour later. Our opinion assumes a ½-hour period.

makes no showing that there was a bona fide issue of race in this matter. *Carter v Braunstein,* 89 Mich App 119; 279 NW2d 596 (1979). Moreover, the prosecutor notes, and the defendant does not dispute, that the defendant expressed satisfaction with the jury with five of his twenty peremptory challenges unused. Thus, the issue is waived. *People v Sharbnow,* 174 Mich App 94, 102; 435 NW2d 772 (1989). We have previously granted an order striking Appendix D to defendant's brief on appeal, which was an affidavit asserting that three of the jurors were white and the other nine black. Although we have granted the motion, were we to consider this fact, we would also conclude that any error was harmless in light of the unexercised peremptory challenges.

Defendant also contends that the trial court erred in admitting a police report containing Delores Turner's statement that she heard defendant say (to her husband) that "he was tired of [decedent] and was going to kill him." Defendant argues that the statement is inadmissable hearsay because it did not meet the foundational requirements of the recorded recollection exception, MRE 803(5).

The following foundational requirements must be met before a memorandum or writing may be admitted into evidence under the recorded recollection exception to the hearsay rule:

Documents admitted pursuant to this rule must meet three requisites: (1) The document must pertain to matters about which the declarant once had knowledge; (2) The declarant must now have an insufficient recollection as to such matters; (3) The document must be shown to have been made by the declarant or, if made by one other than the declarant, to have been examined by the declarant and shown to accurately reflect the declarant's

knowledge when the matters were fresh in his memory. [*People v J D Williams,* 117 Mich App 505, 508-509; 324 NW2d 70 (1982), rev'd and remanded on other grounds 412 Mich 711 (1982).]

Delores Turner testified that she gave a statement to the police at the station on the day following the incident, that she told the truth, that she signed the statement after it was read to her, and that she did not read it before signing it.

Delores Turner identified the statement in court and silently read it in connection with an attempt at impeachment. The prosecutor then asked her: "Didn't you tell the officer that you . . . heard [defendant] say . . . when your husband tried to talk to him [that] he was tired of David [decedent] and was going to kill him?" Delores Turner answered:

*A.* That was outside, that wasn't in my house. I didn't hear that.
*Q.* You didn't hear that?
*A.* No.
*Q.* Did you tell the officer that?
*A.* No, I didn't tell him that.

The prosecutor then read, before the jury, the following question and answer from Delores Turner's statement:

*Question:* What time did he get to your house the first time?
*Answer:* It was around 11:45 P.M. It took a good while. My husband tried to talk to him, but said he said he was tired of David and was going to kill him.

The prosecutor then asked Delores Turner if she remembered that question and answer and Delores

Turner replied "No." The question and answer were later admitted as substantive evidence under MRE 803(5) and read again to the jury.

We think the parties' arguments miss the mark. Perhaps there exists an adequate foundation under MRE 803(5). This case is similar to *People v J D Williams, supra,* in all material respects except that in that case the witness testified that he could not remember the contents of the police report, whereas in this case the witness either denied making or questioned the accuracy of certain statements in the report. A commentator on the law of evidence has written: "If an adequate foundation has been laid, it is not grounds for exclusion that the witness' testimony as to the accuracy of the statement is contradicted by other testimony." McCormick, Evidence (3d ed), § 303, p 868. Delores Turner's testimony that she told the truth and signed the statement after it was read to her could constitute sufficient testimony to establish the third foundational requirement set forth above. McCormick, *supra.* Her own contradictory testimony could be held pertinent to the weight ultimately accorded the statement by the trier of fact, but is insufficient to bar its admissibility.

However, even were we to engage in this analysis, we perceive a problem with the statement not raised by the parties. The statement reads in pertinent part: "My husband tried to talk to him, *but said he said* he was tired of David and was going to kill him." (Emphasis added.) We can only read this as a statement by Delores Turner to the police that her husband told her that defendant told him that he (defendant) was going to kill the decedent. This is consistent with Delores Turner's testimony that she did not hear that conversation. In other words, the police report contains the hearsay statement of Delores Turner's husband to

Delores Turner. The parties have not addressed whether this level of hearsay is admissible, and we do not resolve the question because we find the admission of the contents of the statement harmless, if error.

The statement is most harmful for its tendency to prove premeditation and deliberation. The jury convicted defendant of second-degree murder. There was ample other evidence to support the trial court's denial of the motion for a directed verdict with regard to the first-degree murder charge. Accordingly, defendant was not impermissibly subject to the possibility of a compromise verdict.

Defendant next argues that the trial court erred in allowing impeachment of defendant with evidence of a prior armed robbery conviction.

First, defendant contends that the trial court was bound by the pretrial order of the judge in the first trial suppressing evidence of all defendant's armed robbery convictions, but allowing use of evidence of a conviction of mail theft. This contention lacks merit. On retrial a case stands procedurally as if there had been no prior trial. *People v Phil Clark,* 172 Mich App 1, 4; 432 NW2d 173 (1988). A trial court is not required to follow another trial court's previous evidentiary rulings. *People v Bradshaw,* 165 Mich App 562, 568; 419 NW2d 33 (1988).

Second, defendant argues that the trial court failed to sufficiently articulate its reasons for admitting the evidence of the conviction under the factors listed in *People v Allen,* 429 Mich 558; 420 NW2d 499 (1988), and thereby abused its discretion. It does not appear that the trial court complied with the requirement of MRE 609(b) that the court articulate on the record the analysis of each factor in the balancing test governing admissibility

of evidence of prior convictions. Although the trial court considered the age of each prior conviction, it made no determination regarding whether the offenses were indicative of veracity, whether the offenses were similar to the charged offenses, whether admitting the evidence would cause defendant not to testify, or whether the probative value of the evidence of the convictions outweighed its prejudicial effect. Therefore, the trial court did not comply with MRE 609(b) and *Allen.* See also *Allen, supra,* pp 605-606, for factors to be balanced.

However, we find the court's failure to articulate its analysis of the factors to be harmless. Had the trial court articulated its analysis on the record, we would find no abuse of discretion. *People v Hicks,* 185 Mich App 107, 110; 460 NW2d 569 (1990). Armed robbery contains an element of theft and is punishable by more than one year's imprisonment. Thus, under *Allen,* a court must consider the vintage (the armed robbery conviction was in 1982; the second trial in this case was in 1989) and "the degree to which the crime is indicative of veracity" on the probative value side of the equation. *Allen, supra,* p 606. Armed robbery is primarily assaultive although it contains an element of theft; it therefore "has a lower probative value on the issue of credibility than would other theft crimes." *Id.,* p 611. But it has some probative value. On the prejudice side, a court must consider the similarity of the offenses and the importance of defendant's testimony to the decisional process. Prejudice escalates along with increases in these two factors. *Id.,* p 606.

Applying the *Allen* factors, we find the conviction somewhat probative. On the prejudice side, there is no similarity between murder and armed robbery; thus the prejudice is minimal. In addition

because defendant testified, it is relatively easy to assess the importance of his testimony to the decisional process. See *People v Finley*, 431 Mich 506, 518; 431 NW2d 19 (1988). On the facts of this case, the importance of defendant's testimony was not great. He proffered the theory of self-defense, and yet the facts show a determined pursuit of decedent and a gunshot wound and four serious stab wounds to decedent's back.

Finally, we find that reasonable jurors would find defendant guilty of second-degree murder beyond a reasonable doubt even if evidence of the armed robbery conviction had been suppressed.[2] *People v Hicks, supra,* pp 111-112.

Defendant also claims error in the court's instruction of the jury with regard to self-defense, i.e., that instead of instructing the jury that it must determine whether defendant "honestly and reasonably believed that he [was] in danger of being killed or receiving serious bodily harm," the trial court should have given CJI 7:9:01 (honest belief) as requested by defendant. Defendant's position is without merit. *People v Dabish*, 181 Mich App 469, 477-479; 450 NW2d 44 (1989). See also *People v Heflin*, 434 Mich 482, 502-503; 456 NW2d 10 (1990) ("In Michigan, the killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm."). In *Heflin*, early decisions reciting only an honest belief standard were expressly disapproved. *Id.,* p 503, n 16.

Defendant next argues that the trial court's remark during voir dire that the accused wears "a coat of innocence" that "is taken off by the evi-

---

[2] This entire issue may be academic because defendant offers no citation to the record to support his contention that the jury was in fact made aware of his conviction.

dence," and that the court's use of the terms "crime," "victim," and reference to this case as a "first-degree murder case" denied defendant a fair trial. This claim also lacks merit. Following voir dire, the court instructed the jury properly with regard to the law and the presumption of innocence. It also told the jury that its comments and instructions were not evidence and that they should not be taken as an indication of the court's opinion regarding how the case should be decided. To the extent that defendant claims instructional error, we find that, taken as a whole and not piecemeal, the instructions were proper. We also conclude that the trial court did not pierce the veil of judicial impartiality so as to unduly influence the jury. *People v Johnson,* 174 Mich App 108, 114; 435 NW2d 465 (1989).

Defendant also claims error resulting from the trial court's admission of a bloody jacket in evidence. When a trial court is called upon to make a ruling regarding the admission of evidence, the court's determination of relevance and its assessment of probative value versus prejudicial effect is committed to its discretion and will not be overturned on appeal absent an abuse of that discretion. *People v Holliday,* 144 Mich App 560, 573; 376 NW2d 154 (1985); *People v Myers,* 158 Mich App 1, 16-17; 404 NW2d 677 (1987). We find no abuse of discretion here. The jacket was relevant to show the location of the wounds, which in turn were relevant to show premeditation or deliberation and to negate defendant's claim of self-defense. The trial court balanced the possible prejudicial effect against the probative value of the exhibit and found the jacket relevant, apparently regarding identification because two others had been introduced, and did not find the jacket "to be shocking or inflammatory in any way." As noted,

we find the jacket relevant on several grounds, and we find no abuse of discretion in the trial court's ruling. Cf. *People v Myers, supra.*

Lastly, defendant contends that he is entitled to remand and resentencing on two grounds.

Defendant received twenty-five points under Offense Variable 4 for aggravated physical injury. It is defendant's position that his actions or conduct did not cause "aggravated physical injury." Defendant makes this argument after noting that the testimony at trial showed that David Reese was shot once, stabbed five times, dragged down an alley, and hidden under a porch. However, defendant asserts that, together or separately, these actions do not indicate "aggravated physical injury." This issue is not preserved for appellate review because of defendant's failure to challenge the scoring at sentencing. *People v Kaczorowski,* 190 Mich App 165; 475 NW2d 861 (1991).

With respect to the merits, appellate review of guidelines calculations is very limited. *People v Richardson,* 162 Mich App 15, 16; 412 NW2d 227 (1987). A sentencing judge has discretion in determining the number of points to be scored provided there is evidence on the record that adequately supports a particular score. *People v Day,* 169 Mich App 516, 517; 426 NW2d 415 (1988); *People v Jannifer Williams,* 147 Mich App 1, 7; 382 NW2d 191 (1985). The Sentence Review Committee strongly recommends that this Court uphold scoring decisions for which there is any supporting evidence. *People v Reddish,* 181 Mich App 625, 628; 450 NW2d 16 (1989); *Richardson, supra,* pp 16-17. We find no error requiring resentencing. Among the definitions of "aggravate" found in *Webster's Third New International Dictionary, Unabridged Edition* (1966), is "to make worse,

more serious, or more severe." There was evidence supporting the score.

Defendant also contends that he is entitled to resentencing because he raised objections to alleged inaccuracies in the presentence report to which the trial court did not respond. Specifically, in the portion of the report for the offender's description of the offense, defendant raised two objections: (1) that the report said that "he dropped his knife to the ground, ran to the house, and wanted to make sure that the police had been summoned," when only the portion regarding wanting the police to be summoned was accurate; and (2) that the part of the report that states that defendant "drag[ged] the Complainant's body near a house and lay him under a porch as a means of protecting him," is incorrect in that "he never said that he put the deceased under a porch to protect him."

We are aware of a defendant's due process right to the use of accurate information at sentencing and that a court must respond to allegations of inaccuracies in one of several ways. MCR 6.425(D)(3). See also *People v Hoyt,* 185 Mich App 531, 533-536; 462 NW2d 793 (1990); *People v Thompson,* 189 Mich App 85, 87-88; 472 NW2d 11 (1991). However, where the asserted inaccuracies would have no determinative effect upon the sentence, failure of a court to respond may be considered harmless error. *People v Harrison,* 119 Mich App 491, 496-499; 326 NW2d 827 (1982); *People v Krist,* 107 Mich App 701; 309 NW2d 708 (1981), rev'd on other grounds 413 Mich 937 (1982). This case falls within the limited circumstances in which a remand is not required. In this case, whether or when defendant put down his knife is of no moment to his sentence. In addition, putting the deceased under the porch for shelter could only

inure to defendant's benefit; the correction he desired could only enhance his sentence. Thus, this case is unlike *Harrison* (remand required; the defendant was said to be the "foreman of the crime" and to have "fenced" property). We decline to make the empty gesture of remanding so that the court may hold an evidentiary hearing, accept defendant's version, and strike the disputed matter or declare that the matter played no part in sentencing. Cf. *People v Ristich,* 169 Mich App 754, 759; 426 NW2d 801 (1988) ("We see no need . . . to engage the trial court in the futile exercise of marching up the sentencing hill again, only to hand out the same sentence and march back down again.").

Defendant's convictions are affirmed.