# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JONATHAN ANTONIO LOPEZ-BRIONES,

        Defendant-Appellant.

UNPUBLISHED
January 22, 2015

No. 318522
Wayne Circuit Court
LC No. 10-011090-FC

Before: DONOFRIO, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree murder, MCL 750.316(1)(a), two counts of murder committed during the perpetration of a felony (felony-murder), MCL 750.316(1)(b), carjacking, MCL 750.529a, armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant to natural life imprisonment for each of the first-degree murder convictions as merged with each of the felony-murder convictions, 225 months to 35 years' imprisonment for the carjacking conviction, 18 to 35 years' imprisonment for the armed robbery conviction, and two years' imprisonment for the felony-firearm conviction. We affirm defendant's convictions and sentences, but remand for the limited purpose of correcting the names of the victims in defendant's Presentence Investigation Report (PSIR).

## I. BACKGROUND.

This case arises from a carjacking, armed robbery, and double murder occurring on May 29, 2010, in Detroit, Michigan. Around 11:00 p.m., defendant and Victor Oquendo[2] approached complainant Francisco Martinez as he was walking to his car, a white 2003 Chevrolet Malibu.

---

[1] Defendant was also charged with third-degree arson, MCL 750.74, for burning an item of personal property valued between $1,000 and $20,000. The trial court granted defendant's motion for a directed verdict on the arson charge because it concluded that the prosecution failed to establish the value of the car defendant allegedly burned.

[2] Oquendo was originally charged as a codefendant, but later pled guilty to two counts of second-degree murder, MCL 750.317, and felony-firearm.

Oquendo threatened Martinez with a gun and Martinez surrendered his car keys. Oquendo and defendant drove away in the Malibu, along with Martinez's wallet, which was inside the car. That same night, defendant and Oquendo approached a group of men in an alleyway and fatally shot decedents Fernando Juarez and Gerardo Juarez. Later, defendant and Oquendo burned the Malibu.

On September 29, 2010, Detroit Police Sergeant Kenneth Gardner interviewed defendant. Defendant told Gardner that he and Oquendo robbed Martinez, but did not specify whether they took his car. He identified the vehicle that he and Oquendo burned as a white Grand Am, not a Malibu. Defendant also admitted that he and Oquendo shot Fernando and Gerardo, but claimed they were near a red Camaro, which was never found at the scene. Gardner wrote a statement summarizing the interview. Defendant reviewed and signed the statement, verifying its accuracy and correcting any errors. At trial, defendant testified that the statement was coerced. Defendant, who is an undocumented immigrant originally from Honduras, contended that Gardner told him what to say and threatened him with prison and deportation if he refused.

Prior to trial, defendant requested that the trial court dismiss two of his prior appointed trial counsel. Following dismissal of defendant's second trial counsel, defendant specifically requested that Robert Slameka be appointed as his trial counsel. The trial court granted defendant's request. However, defendant began complaining to the trial court about Slameka's representation and just prior to voire dire requested a fourth attorney telling the trial court:

> *Defendant*: I want to say to the Court that during the time I met him I thought he was, you know, gonna cooperate with me, we could get along. But he doesn't— he came and seen me only twice. He came to see me right now before trial.
>
> *The Court*: Yes.
>
> *Defendant*: And he has no plan. This man has no plan. And every time I talk to him he has an attitude. I can't get along with him. I don't feel safe with him fighting my case. I'm not trying to stretch my case, I'm just trying to get what's right for me. So I apologize if I disrespected the Court in this way but I cannot have him. We can't get along.

The trial court denied defendant's plea for a new attorney and reminded him that it appointed Slameka as substitute counsel because defendant requested Slameka by name. Defendant interrupted the trial court reiterating his request until bailiffs removed him from the court room.[3] Several minutes later, the trial court brought defendant back into court, but he continued to complain about Slameka. The trial court returned defendant to lockup. The next day, as members of the jury filed in to take their seats, defendant punched his trial counsel Slameka in the mouth, stating, "you're fired now f----r." After punching Slameka in the face,

---

[3] Defendant interrupted the proceedings on numerous occasions causing the trial court to remove defendant from the court room, and placing him in a secure holding cell where he witnessed most of his trial in a lock-up unit via video.

defendant turned to the trial judge asking: "[i]s he fired now bih?" The trial court excused the jurors to the jury room and the bailiffs took defendant back into lockup. The trial court then asked Slameka, "who was clearly bloodied as a result of the incident," whether he could continue with the representation. Slameka stated:

> [Defendant] has, figuratively speaking, assaulted me since the day I met him. Constantly berating me, constantly saying I can't do this I can't do that. What's the plan? He knows what the plan is, what the plan was. In fact, he had two previous lawyers who had the same plan, to question the voluntariness of his confession. That hasn't changed, that will never change.

> If you want to appoint another counsel to do that, that's up to you, but I'm sure the counsel will be in the same position the three previous lawyers have been, to wit, attacking the voluntariness of his statement.

The trial court agreed that Slameka could continue the representation, but impaneled a new jury to prevent prejudice to defendant, and because members of the previous panel gave witness statements regarding the assault to police. The trial court further ordered defendant to remain in lockup where he observed the trial with the aid of audiovisual equipment.

## II. ANALYSIS.

On appeal, defendant first argues that his trial counsel rendered ineffective assistance of counsel. Ineffective assistance of counsel claims must be raised at the trial court level by a motion for a new trial or a motion for an evidentiary hearing. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002), citing *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Defendant filed a motion to remand for an evidentiary hearing, but did so only after filing the present appeal. Accordingly, this Court's review is limited to mistakes apparent from the record. *Rodriguez*, 251 Mich App at 38; *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994).

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). The trial court's findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id.*, citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

To establish a claim of ineffective assistance of counsel, defendant must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012); *Lockett*, 295 Mich App at 187. In addition, defendant must show that the proceedings were fundamentally unfair or unreliable as a result of the ineffective assistance. *Lockett*, 295 Mich App at 187. "Defense counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable and professional judgment.'"

*People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), quoting *Strickland*, 466 US at 690. Defendant bears the burden of overcoming this presumption. *LeBlanc*, 465 Mich at 578.

Defendant argues that his trial counsel rendered ineffective assistance by deciding that he could continue to represent defendant after defendant assaulted him and claims that he lacked a trial strategy. As previously stated, defendant's trial counsel told the trial court that he had a specific plan and stated that he could proceed with that plan despite his difficult relationship with defendant. Then, as revealed by the record produced at trial, defense counsel executed his strategy. While cross-examining Gardner, he pointed out the differences between defendant's statement and the facts of the case, such as the absence of a Camaro, the lack of an explicit admission to stealing Martinez's car, and defendant's claim that the car he and Oquendo were in was a Grand Am, not a Malibu. In an effort to support defendant's claim that he felt threatened by Gardner, defendant's trial counsel laid the foundation for defendant's mistrust of police, eliciting testimony that defendant had previously been beaten by Honduran law enforcement officers. He also advised defendant according to what he believed were defendant's best interests. When it came time for defendant to decide whether to take the stand, defendant's trial counsel stated on the record that he consulted with defendant about the risks of testifying and advised defendant against it. However, defendant was "adamant that he want[ed] to testify[,]" and his trial counsel respected this decision. Notably, defendant's trial counsel also argued for, and was granted, a directed verdict on the third-degree arson charge. Defendant's trial counsel ably continued the defense notwithstanding defendant's behavior.

This Court faced a similar issue in *People v Staffney*, 187 Mich App 660; 468 NW2d 238 (1990). In *Staffney*, defendant became disruptive in the court room during trial, and at one point struck his trial counsel in the face, causing trial counsel to suffer a split lip and the loss of two teeth. *Id.* at 662. On appeal, Staffney argued, in part, that the trial court abused its discretion by denying his motion for substitute counsel. Citing *People v Siler*, 171 Mich App 246, 256; 429 NW2d 865 (1998), this Court stated:

> We will not condone or allow a defendant to perpetrate chaos at his own trial and then obtain a mistrial on the basis of prejudice. For the same reason, we believe that the court did not abuse its discretion in denying the motion for substitute counsel. We further note that, although not controlling, providing substitute counsel mid trial under the facts of this case would have disrupted the judicial process. (Internal quotations and citations omitted).

On this issue, and contrary to the assertions by defendant, we find our decision in *Staffney* controlling. Here, as was the case in *Staffney*, defendant sought to inflict prejudice into his trial by his actions. As in *Staffney*, defendant sought to remove his trial counsel, and when his request was denied, sought to gain the relief requested by assaulting his trial counsel. If we were to "reward" defendant for his action, such a ruling would run counter to the essential and proper administration of any court proceeding. Further, as noted by this Court in *Staffney*, "[d]efendant should not be permitted 'one free swing' at his attorney." Defendant made a conscious choice to physically assault his trial counsel with the hope that assaulting his trial counsel would lead to a result he was previously denied. This Court "will not condone or allow a defendant to perpetrate chaos at his own trial and then obtain a mistrial on the basis of prejudice." *Staffney*, 187 Mich App at 667.

Further, there is no evidence that the outcome of the proceedings would have been any different if defendant's trial counsel had asked the trial court to appoint new counsel. There is no evidence that the jury would have given defendant's claim that Gardner coerced his statement any greater credit if defendant had been represented by substitute counsel. Although the second jury did not witness the incident, defendant claims it "undoubtedly knew or suspected" that defendant assaulted his attorney. However, defendant does not explain how appointing a new attorney would have absolved the prejudice associated with this knowledge. And, taking defendant's argument to its logical conclusion, even if defendant were represented by substitute counsel, presumably the jury would still have "undoubtedly" known that defendant assaulted his former counsel. Nor has defendant demonstrated any prejudice from trial counsel representation such that the outcome of the proceedings would have been different. *Trakhtenberg*, 493 Mich at 51. Accordingly, he is not entitled to relief.

Defendant next argues that he is entitled to resentencing based on the inaccuracies in the PSIR. This Court reviews challenges to the accuracy of information contained in a PSIR for an abuse of discretion. *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id*.

We note that defendant waived his objections to the PSIR at sentencing. A waiver is "the unintentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. After making a single correction, defendant's counsel told the trial court "everything within the presentence report is accurate." Defendant did not object to this statement when given a chance to speak by the trial court. Defendant's complaints about the inaccuracies of the PSIR therefore cannot form the basis of his appeal. Nevertheless, because we remand for a limited, ministerial purpose, we analyze each of defendant's arguments in turn.

"A defendant is entitled to be sentenced on the basis of accurate information." *People v Harrison*, 119 Mich App 491, 496; 326 NW2d 827 (1982). At sentencing, the trial court must ensure that defendant, his attorney, and the prosecutor have had an opportunity to review the PSIR and give each party an opportunity to explain or challenge the accuracy of its details. MCR 6.425(E)(1)(a)-(E)(1)(b). Once a defendant effectively challenges the information contained in a PSIR, the prosecution must prove by a preponderance of the evidence that the facts are as the prosecution claims and the trial court must then respond to and resolve the challenge. MCR 6.424(E)(2); *People v Lloyd*, 284 Mich App 703, 706; 774 NW2d 347 (2009). However, if the alleged inaccuracies would have no effect on the sentence, the failure of the trial court to address them is considered harmless error. *People v Daniels*, 192 Mich App 658, 675; 482 NW2d 176 (1991).

As defendant argues, the PSIR includes incorrect information because it misidentifies Martinez as a murder victim, even though he testified at trial and the evidence demonstrated that Fernando and Gerardo were the actual murder victims. But incorrectly naming the victims is not the type of error that requires resentencing, particularly where the trial court was familiar with the facts. See *Daniels*, 192 Mich App at 675-676 ("In this case, whether or when [the] defendant put down his knife is of no moment to his sentence.") Further, the trial court did not rely on the

misidentification. The trial court invited defendant to speak to Fernando's wife at sentencing, identifying her as "the wife of one of the decedents," demonstrating its awareness that Fernando was one of the murder victims. The prosecutor also reiterated that defendant's convictions for first-degree and felony-murder applied to Gerardo and Fernando when it requested that those convictions be merged for sentencing purposes.

While the misidentification error was harmless, we remand pursuant to MCR 7.216(A)(4), for the limited purpose of correcting the victims' names in the event that their identity becomes relevant for later use by the Department of Corrections. "Critical decisions are made by the Department of Corrections regarding a defendant's status based on the information contained in the presentence investigation report." *People v Norman*, 148 Mich App 273, 275; 384 NW2d 147 (1986). For this reason, the PSIR "should accurately reflect any determination the sentencing judge has made concerning the accuracy or relevancy of the information contained in the report." *Id*.

We do not consider any of defendant's further arguments relative to the PSIR as defendant has waived these arguments and we find no error justifying modification of the PSIR. *Carter*, 462 Mich at 215.

Affirmed but remanded for correction to the PSIR consistent with this opinion. We do not retain jurisdiction.

/s/ Pat M. Donofrio
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens