# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 20, 2018

v

No. 335597
Kent Circuit Court
LC No. 96-001857-FC

CHRISTOPHER LEE PELTIER,

Defendant-Appellant.

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

In 1996, defendant was convicted of felony murder, MCL 750.316(1)(b), carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and conspiracy to commit armed robbery, MCL 750.529. At the time of the offense, defendant was 15 years old. He and two other minors conspired to commit an armed robbery of a store. Two boys, defendant and the one carrying the firearm, entered the store. During the robbery, the boy with the firearm shot and killed the storekeeper. The third boy acted as the get-away driver. Defendant was sentenced to mandatory life imprisonment without parole for felony murder, life imprisonment for conspiracy to commit armed robbery, and a consecutive two-year term for felony-firearm.

Defendant's sentence for felony murder was vacated following the United States Supreme Court decisions in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012) (holding that mandatory imposition of life without parole for juveniles constituted cruel and unusual punishment in violation of the Eighth Amendment); and *Montgomery v Louisiana*, ___ US ___; 136 S Ct 718; 193 L Ed 2d 599 (2016) (holding that *Miller* applied retroactively). At resentencing on September 30, 2016, Kent Circuit Court Judge Mark A. Trusock resentenced defendant to 35 to 60 years' imprisonment on the felony-murder charge pursuant to MCL 769.25a.

On appeal, defendant raises two arguments. First, that the trial court relied on inaccurate information when determining his sentence. Second, that the trial court failed to properly consider the factors outlined in *Miller*. We agree with defendant that the trial court relied on inaccurate information in sentencing him and so, remand for resentencing.

In imposing sentence, the trial court properly concluded that defendant's behavior and progress while in prison was relevant, and addressed it in some detail. The court placed significant emphasis on its conclusion that the Department of Corrections (DOC) still

categorized defendant as a Level V security risk. This is the highest possible security classification and indicated that defendant had demonstrated little, if any, rehabilitation despite his many years of incarceration. The trial court stated:

> Your record in the prison system has not been good. I have a chart that— where you have been housed. Level Five is the highest level of security. You have been in there—as recently as January of 2014, January of [20]15, January— or February of [20]16, you were classified as Level Five. Evidently, in March [2016,] you were classified as a Level Four.

Unfortunately, the chart referred to by the trial court is not contained within the record provided to this Court, and the trial court did not reference its origin.

In his sentencing memorandum, defendant provided the court with an affidavit signed by Patricia Caruso, a former Director of the Department of Corrections. She averred that she had reviewed defendant's DOC record and that defendant

> is currently housed in the lowest security level for which he is qualified as a prisoner serving a life sentence: Level II. His management level is the lowest possible assigned by the corrections institution, reflects that he is a low risk prisoner who is not a management or disciplinary problem. He would screen and be placed in the lowest possible security level as a Level I prisoner, the lowest level of confinement, if he were not serving a life sentence and was within four years of a minimum sentence release date.

She also noted that the DOC's records classified defendant as "low risk for violence," and that "[c]learly[,] staff were comfortable with placing [defendant] in lower levels of security and his behavior has confirmed their decisions."

The court was also provided with a supplemental affidavit from Caruso in which she averred:

> A prisoner classification may reflect placement but is not always consistent with the true classification level a prisoner has been screened to. A prisoner may be housed at a level different than their classification indicates, as the system allows staff to place a prisoner in a different level for a variety of reasons. For example, Mr. Peltier was classified as Level IV on January 26, 2004. He actually screened to be classified as custody Level II and management Level II. However, the screener indicated that although his true level was II, he was in a Level IV bed pending Level II bed availability. Because he was in a Level IV bed his classified level reflected IV. On July 19, 2007, Mr. Peltier was classified as a Level IV. He screened a Level II/I but was housed in Level IV. There are several other dates where Mr. Peltier was screened to be classified as a Level II/I, but classified higher due to lack of lower custody bed space. Again in 2016 Mr. Peltier was classified as a Level V. He screens as a Level II/I, and the screener notes he is in Level V due to bed space availability.

Another example of the stated classification being different from what a prisoner has been classified to, based on behavior and risk, is the Security Classification Screen Review dated 2/23/2016, completed at the Baraga Correctional Facility. The review demonstrates that Mr. Peltier screens as a Il/I classification. Level II would be his confinement level and is the lowest he can score as a lifer. Level I is his management level and is the lowest any prisoner can score. However, the staff screener notes that Mr. Peltier should be housed in Level IV to monitor his adjustment. Mr. Peltier was subsequently transferred to the Michigan Reformatory shortly thereafter, and is currently housed in Level II there. The temporary higher classification level does not reflect any higher risk assessment of Mr. Peltier, but just the effect of the monitoring system. This often occurs if staff[s] are not familiar with the prisoner. Those familiar with the classification system understand that these common occurrences do not typically reflect negative management or behavior issues.

A review of Mr. Peltier's file indicates numerous times when he was housed at a higher level than his classification indicated, pending available bed space at his true security level. Other times, Mr. Peltier was placed in protective custody which is always classified as Level IV or V.

The trial court's conclusion that defendant was classified as a Level V security risk in February 2016 and a Level IV security risk in March 2016, lacked substantial evidence, at least, in light of these affidavits. When a sentencing decision is based on inaccurate information, the proper remedy is resentencing. *People v Haugh*, 435 Mich 876; 458 NW2d 897 (1990); *People v Daniels*, 192 Mich App 658, 675; 482 NW2d 176 (1991) (resentencing is required when inaccurate information is relied on at sentencing or where the trial court fails to resolve a factual dispute unless the issue is "of no moment" to the sentencing decision).[1]

---

[1] "[I]t is well settled that the use of inaccurate information at sentencing may violate defendant's right to due process." *People v Sharp*, 192 Mich App 501, 509-510; 481 NW2d 773 (1992), citing US Const, Am XIV; Const 1963, art 1, § 17. See also *People v Miles*, 454 Mich 90, 100; 559 NW2d 299 (1997) ("[D]ue process is satisfied as long as the sentence is based on accurate information and the defendant has a reasonable opportunity at sentencing to challenge that information."). In addition to inaccurate information, sentences based on "materially untrue" assumptions also violate due process. *Townsend v Burke*, 334 US 736, 740-741; 68 S Ct 1252; 92 L Ed 1690 (1948).

We vacate defendant's sentence and remand for resentencing. Given that determination, we need not address defendant's challenge to his sentence based upon *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 LEd2d 407 (2012). We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola