PEOPLE v DABISH

Docket No. 107922. Submitted October 16, 1989, at Detroit. Decided December 18, 1989.

Amer Dabish was convicted of involuntary manslaughter and possession of a firearm during the commission of a felony following a jury trial in the Detroit Recorder's Court. The trial court, Terrance K. Boyle, J., sentenced defendant to 1½ to 15 years imprisonment on the manslaughter conviction and a consecutive two-year term on the felony-firearm conviction. Defendant appealed.

The Court of Appeals *held:*

1. The evidence adduced at trial did not support an instruction on the misdemeanor offense of careless, reckless or negligent use of a firearm. The trial court properly denied defendant's request for such an instruction.

2. The trial court did not err in refusing to instruct the jury that defendant had no duty to retreat from his place of business.

3. The trial court properly instructed the jury on self-defense.

4. The trial court's jury instructions were correct. Since the evidence in this case was mixed, both direct and circumstantial in nature, the trial court was not required to give CJI 4:2:02(6) and (7).

Affirmed.

1. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED MISDEMEANORS.

A trial court, in its discretion, should grant a request for an instruction on a lesser included misdemeanor where: a proper request is made, an appropriate relationship exists between the charged offense and the requested misdemeanor, the requested misdemeanor instruction is supported by a rational view of the

REFERENCES

Am Jur 2d, Homicide §§ 153, 163, 164, 167, 169; Trial §§ 617, 843, 845, 876-878.

Homicide: duty to retreat as condition of self-defense when one is attacked at his office, or place of business or employment. 41 ALR3d 584.

evidence, the defendant is given adequate notice to defend where the prosecution requests the instruction, and the requested instruction does not result in undue confusion or injustice.

2. CRIMINAL LAW — SELF-DEFENSE — DUTY TO RETREAT.

Michigan recognizes a rule that there is no duty to retreat and avoid using deadly force in one's home; Michigan does not apply a broad rule allowing no-retreat from a place of business.

3. HOMICIDE — SELF-DEFENSE.

The reasonable and honest belief standard has been adopted as the test of self-defense in Michigan.

4. CRIMINAL LAW — JURY INSTRUCTIONS.

Use of the Michigan Criminal Jury Instructions is not mandatory.

5. CRIMINAL LAW — JURY INSTRUCTIONS — EVIDENCE — DIRECT EVIDENCE — CIRCUMSTANTIAL EVIDENCE.

In a case of mixed direct and circumstantial evidence, the use of Criminal Jury Instructions relating to the sufficiency of circumstantial evidence is optional and, if used, should only be used where the circumstantial evidence against the defendant is weak; the instructions need not be given where there is direct evidence supporting conviction (CJI 4:2:02[6] and [7]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Olga Agnello,* Assistant Prosecuting Attorney, for the people.

*Richard Paul Zipser,* for defendant.

Before: McDONALD, P.J., and MICHAEL J. KELLY and MURPHY, JJ.

MURPHY, J. Following a jury trial, defendant was convicted of involuntary manslaughter, MCL 750.321; MSA 28.553, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Thereafter, defendant was sen-

tenced to 1½ to 15 years imprisonment on the manslaughter conviction with a consecutive two-year prison term on the felony-firearm conviction. Defendant now appeals and we affirm.

This matter involves the prosecution of defendant for the October, 1986, shooting death of undercover Detroit Police Officer Freddie Jackson. Jackson was working with his partner Adrian Ponder in an unmarked car trying to apprehend suspected car thieves near Idaho Street in Detroit. Both Ponder and Jackson were dressed in street clothes. Defendant was working alone at his business, Intrastate Distribution, Inc., located on Idaho Street.

Ponder testified that he and Jackson had been sitting in Jackson's unmarked car between Idaho and Midland Streets surveying the area for crime. Ponder saw three males walking south on Idaho on the side of the street opposite defendant's office. The three males walked up to defendant's car, a Monte Carlo, and looked inside. Two of them got into the car and the third stayed behind the car as a lookout. Ponder and Jackson decided to drive up to the Monte Carlo and block its path because they suspected the three were attempting to steal the car.

Jackson then put a portable blue oscillating light on the dashboard, plugged it in and drove up to the Monte Carlo. Ponder and Jackson, who had a portable radio in his hand, jumped out of the car and the three men ran away. Ponder took several steps away from Jackson's car when he heard a gunshot. Ponder then saw a man standing in the doorway of defendant's business with a gun aiming it at the officers. Ponder jumped behind Jackson's car, pulled his gun out, held up a badge, and identified himself as a police officer. The man at the door yelled, "Fuck you, you're not the police,"

and went into the building. Ponder then realized that Jackson had been shot in the face and chest. Ponder also noticed Jackson's gun was still in his holster, which was hidden under his jacket. When additional officers arrived, defendant was ordered out of the building and arrested.

Defendant testified that at approximately 7:50 P.M. on October 6, 1986, he was alone in his office. He was typing a letter when he heard noises coming from his car. He described the noises as the sound of car doors being opened. He got up and looked through the peephole and saw two people seated in the front seat of his car. He went to the bathroom where a shotgun was kept in the closet. The gun had been placed there in 1985 by his brother, in case he needed it for protection. Before October 6, he had never fired a gun.

When he returned and looked for the thieves, the front car doors were opened and there was no one in the car. He stepped into the doorway with the gun pointed toward the sky. He kept his leg in the doorway so the door would not close behind him. He saw a man standing next to his car and another man on the opposite side of his car. He asked what was going on and they did not answer. The man on the driver's side had his back to defendant and started to turn around while bent in a kneeling position with his hand on what looked like a gun. Defendant told the men to leave and, when they did not leave, he fired once. Defendant then threatened, "If you don't get the hell out of here, I'm calling the police." He did not believe that the man who had identified himself as a police officer was an officer. Defendant then went into his office and closed and locked the door. Defendant allegedly did not shoot at Ponder because he believed that Ponder did not threaten or try to kill him.

On cross-examination, defendant testified that at some point he went out of his office with a shotgun in his hand and he made the decision to point the gun at Jackson and pull the trigger. He admitted the shotgun was normally kept loaded in a closet with a round in the chamber and the safety switch off. He also testified that he did not care about his car and that it was not right to kill someone over a car. He further admitted that when he went out with his gun he had not called the alarm company or 911. The jury returned a verdict of guilty of involuntary manslaughter and felony-firearm. Defendant now appeals.

Defendant first contends that the trial court erred in failing to give his requested instruction on the misdemeanor offense of careless, reckless or negligent use of a firearm. We disagree because the evidence adduced at trial did not support the giving of such instruction.

Our Supreme Court in *People v Steele,* 429 Mich 13; 412 NW2d 206 (1987), explained that in *People v Stephens,* 416 Mich 252; 330 NW2d 675 (1982), it adopted a new rule addressing lesser included misdemeanor instructions that would better serve the goals of preventing harassment of the defendant, eliminating compromise verdicts, and avoiding jury confusion. *Steele, supra,* pp 18-19.

The first condition of *Stephens* is that there be a proper request by the defendant for such an instruction. Second, there must be an appropriate relationship existing between the charged offense and the requested misdemeanor. Third, the requested misdemeanor must be supported by a rational view of the evidence adduced at trial. Fourth, if the prosecutor requests the instruction, the defendant must have adequate notice of it as one of the charges against which he may have to defend. Finally, the fifth condition is that the

requested instruction not result in undue confusion or injustice. The trial court is vested with substantial discretion in determining whether the cause of justice would be served by giving lesser included misdemeanor instructions on the facts of any given case. *Steele, supra,* pp 19-22.

In this case, the trial court instructed the jury on second-degree murder, manslaughter, and involuntary manslaughter. It denied defendant's request to instruct on careless, reckless, or negligent use of a firearm. See MCL 752.861; MSA 28.436(21) and CJI 11:3:01 and 11:3:03. Having carefully reviewed the record, we conclude that the third prong of the *Stephens* test has not been satisfied; that is, a rational trier of fact could not conclude that there was evidence to support the misdemeanor instruction.

Defendant testified that he made a conscious, mental decision to aim the gun at Jackson and pull the trigger so that the pellets would strike the victim. We conclude that this willful or conscious and knowing action by defendant precludes application of the reckless discharge instruction in this case. See CJI 11:3:03. Moreover, we note that defendant does not argue that he did not intend to shoot Officer Jackson, only that he did it with the belief that it was necessary for self-defense or the defense of his property. Therefore, as the evidence was not appropriate to support an instruction on reckless discharge of a firearm, the court did not err in refusing to give that instruction.

Defendant next contends that the trial court erred in refusing to instruct the jury that defendant had no duty to retreat from his place of business. We disagree.

Generally, Michigan has recognized that there is no duty to retreat and avoid using deadly force in one's home. *Pond v People,* 8 Mich 150, 175-176

(1860); *People v Crow,* 128 Mich App 477, 488; 340 NW2d 838 (1983). See also *People v Joeseype Johnson,* 75 Mich App 337, 341-343; 254 NW2d 667 (1977). This Court in *Joeseype Johnson* reversed a security guard's conviction for second-degree murder for shooting an assaultive theater patron. This Court rejected the rigid trial court instruction that the defendant had a duty to retreat. The Court limited its holding to the facts of the case:

> For purposes of the present appeal, however, we need not and hence do not decide whether to expand the "no-retreat" exception to cover all persons who encounter deadly force in their places of business. We approach with caution a decision to enlarge an exception that has grown but little since its original Michigan enunciation in *Pond v People,* 8 Mich 150, 177 (1860). Especially is this so where extending the "no-retreat" exception might heighten the prospect that an individual will choose to shed another's blood rather than avoid a conflict.
>
> On the other hand, the virtue of the common law is its resilience, its willingness to yield in the face of reason and common understanding. The choice is not whether to be for or against unnecessary killing. As with most of the law, the alternatives are neither so polar nor simplistic. To hold that a security guard, assigned to protect theater patrons, must flee to a place of safety when confronted by a deadly attack is to disregard the possibility that such a withdrawal might permit an aggressor to vent his anger on those patrons remaining in the crowded lobby.
>
> *     *     *
>
> We hold as a matter of law that under the circumstances of this case a private security guard hired to maintain order and protect business invitees has no obligation to retreat when acting in the course of his employment, but may meet deadly force with deadly force. It is incongruous to

expect defendant to retire to safety when his job commands that he remain. It is illogical to demand that he flee when by so doing he, as well as his employer and the theater owner, may arguably be held civilly accountable for the havoc wreaked in his absence. It is unrealistic for this Court, safely isolated in its appellate aerie, to enforce a rule whose practical application in the instant setting denies common sense. [*Id.,* pp 341-343.]

More recently, this Court in *Crow, supra,* reversed a manslaughter conviction where the trial court had instructed the jury that the defendant had a duty to retreat from his car. In *Crow,* the defendant was attacked in his car by a hitchhiker and the defendant stabbed the assailant in self-defense. The trial court instructed the jury that there was a duty to retreat. This Court noted:

Unless the prosecution has shown beyond a reasonable doubt that the defendant is not to be believed, imposing on him an obligation to retreat or escape in the circumstances of this case is simply not consonant with common experience. Requiring as a rigid rule of law that a person in defendant's circumstances abandon what sanctuary he possesses in his automobile, and indeed the automobile itself, to flee into a wet, dark, semirural countryside, would be to require such a person to make a Hobson's choice under very stressful circumstances. The law does not require such conduct. [*Crow,* p 489.]

Although the holdings in *Joeseype Johnson* and *Crow* suggest some broadening of the scope of the no-retreat rule, the holdings were limited to the facts of each case. Presently, Michigan simply does not apply a broad rule allowing no-retreat from a place of business. We note that the no-retreat rule is even less applicable to the facts of this case, where defendant was inside his locked office when

he voluntarily chose to leave the safety of the building, stand at the building's front door, and shoot at Officer Jackson. The testimony elicited at trial revealed that defendant was in the doorway of his office building when he shot at Officer Jackson. Although defendant testified that he felt the deceased had a gun, there is no evidence that the officer approached the building before defendant stepped in the doorway. Therefore, there was no evidence Officer Jackson actually presented a threat of assault to defendant before defendant stepped out of the office.

The trial court instructed the jury as follows:

> The law requires a person to avoid using deadly force if he can safely do so. If the Defendant could have safely retreated but did not do so, his failure to retreat is a circumstance which you may consider together with all other circumstances in determining whether he went further in repelling the danger than he was justified in doing.

We conclude that the trial court properly refused to give defendant's requested jury instruction on there being no duty to retreat.

Defendant next contends that the trial court erred in instructing the jury on self-defense pursuant to CJI 7:9:01. Specifically, when the court instructed the jury, it used the word "reasonable" in the self-defense instruction. Defendant argues that the effect of the use of the word reasonable confused the jury so as to shift the subjective standard to be used to an objective standard. We disagree.

Recently, this Court in *People v Garfield,* 166 Mich App 66, 78-79; 420 NW2d 124 (1988), stated that the term "reasonably believed" complied with the intent of CJI 7:9:01:

In CJI 7:9:01, the Committee drafters stated that they recognized that the term "reasonable belief" is used in some instructions, but that they found the standard to be that of honest belief. However, we note that since those jury instructions were drafted, the Michigan Supreme Court has used the word "reasonable" in its standard for self-defense. In [*People v Lenkevich,* 394 Mich 117, 124; 229 NW2d 298 (1975)], the Court stated:

"If attacked by a cotenant or other occupant, as here, defendant had the right to protect herself if the circumstances caused her reasonably to believe that there was a present and impending necessity so to act to prevent the infliction of death or great bodily harm." [394 Mich 124.]

* * *

Until the Supreme Court states otherwise, we adopt the "reasonable and honest" belief standard as the test of self-defense in Michigan.

The standard of review for alleged errors concerning jury instructions requires, first, that there be a proper objection in the trial court, and, second, that the jury instructions are to be read as a whole, not extracted in a piecemeal fashion. *People v Kelly,* 423 Mich 261, 270-272; 378 NW2d 365 (1985). Moreover, relief will be given only when necessary to avoid manifest injustice. *Id.,* p 272.

In this case, the lower court instructed the jury as to defendant's right to use deadly force in self-defense as follows:

First, at the time of the act the Defendant must *honestly and reasonably* believe that he is in danger of being killed or of receiving serious bodily harm. If he so believes, he may immediately act and defend himself even to the extent of taking human life if necessary. Although it may now turn out that the appearances were false and that he was mistaken as to the extent of the real danger, he is to be judged by the circumstances as

they appeared to him at the time of the act, so long as that belief on his part is reasonable under the circumstances.

*   *   *

A Defendant in a state of excitement is not held to fine distinctions of judgment about how much force is necessary for him to use in order to protect himself. However, it is necessary that such belief be *honest and reasonable* under all the circumstances as they appeared to him.

*   *   *

However, if the Defendant *honestly and reasonably* believed that he was in imminent danger of death or serious bodily harm and that deadly force was immediately necessary to repel such danger, he was not required to retreat or to consider whether he could safely retreat. [Emphasis added.]

Although the court's instructions do not duplicate in an identical fashion CJI 7:9:01, they do comply with the statement of the law as stated in *Garfield, supra.* Therefore, we conclude that the trial court properly instructed on self-defense.

Defendant next contends that the trial court erred when instructing the jury on mixed circumstantial and direct evidence. Specifically, defendant argues that the court failed to instruct the jury that the prosecution must negate every reasonable theory consistent with defendant's innocence. We disagree.

Recently, this Court in *People v Julian,* 171 Mich App 153, 159; 429 NW2d 615 (1988), analyzed the applicability of CJI 4:2:02(6) and (7) to cases involving mixed direct and circumstantial evidence. First, this Court held that the use of standard jury instructions was not mandatory. *Id.,* p 159. Second, the Court held that use of §§ 6 and 7 is optional in cases involving mixed direct and circumstantial evidence. Third, the Court held that

if used, they should only be given where the circumstantial evidence against the defendant is weak. *Id.*

In addition, this Court in *People v Moore,* 176 Mich App 555, 556-557; 440 NW2d 67 (1989), held that CJI 4:2:02(7) need only be given where there is weak circumstantial evidence against the defendant and need not be given where there is direct evidence supporting conviction.

In this case, defendant does not dispute that the evidence was mixed, that is, both direct and circumstantial in nature. In applying this Court's holdings in *Julian* and *Moore,* it is clear that subsections (6) and (7) of CJI 4:2:02 were not required to be given in this case. Therefore, we conclude that the trial court's instructions were correct.

Finally, having carefully reviewed the lower court record, we conclude that defendant's three remaining claims of error warrant neither discussion nor reversal.

Affirmed.