PEOPLE v TRUONG (AFTER REMAND)

PEOPLE v NGUYEN (AFTER REMAND)

Docket Nos. 162306, 162307. Submitted April 17, 1996, at Grand Rapids. Decided August 16, 1996, at 9:15 A.M. Leave to appeal sought.

Tuan Truong and Tai Van Nguyen were convicted by a jury in the Kent Circuit Court, Donald A. Johnston, J., of first-degree murder and possession of a firearm during the commission of a felony. They appealed, and the appeals were consolidated by the Court of Appeals. The Court of Appeals, DOCTOROFF, C.J., and MURPHY and REILLY, JJ., while retaining jurisdiction, granted Truong's motion to remand to the trial court to allow him to move for a new trial and seek other relief. Unpublished order of the Court of Appeals, entered April 14, 1994 (Docket No. 162306). On remand, the trial court denied Truong's motions. The Court of Appeals, MURPHY, P.J., and SAWYER and NEFF, JJ., while retaining jurisdiction, granted Nguyen's motion to remand to the trial court to allow him to move for a new trial. Unpublished order of the Court of Appeals, entered November 8, 1994 (Docket No. 162307). On remand, the trial court denied Nguyen's motion.

After remand, the Court of Appeals held:

1. The trial court reasonably found that a probate court order that was entered when Truong petitioned the court to correct his birth date and that established his correct birth date to be May 5, 1974, raised a rebuttable presumption regarding his age. The trial court did not err in finding that the presumption was not overcome by the evidence submitted by Truong or in relying on the probate court's determination of Truong's age.

2. The trial court's reliance on Truong's birth date established by the probate court, which differs from the birth date determined by the Immigration and Naturalization Service, did not violate the Supremacy Clause, US Const, art VI, cl 2.

3. Although Truong received a summarized translation of some of the attorney colloquy during the trial, he received a word-for-word translation of all the questions to and answers from the witnesses. The occasional, minor lapses in simultaneous translation did not render the trial unfair or deprive Truong of his rights to due process, confrontation, or to be present at trial.

4. The trial court did not err in finding that Truong knowingly, intelligently, and voluntarily waived his constitutional right to counsel and privilege against self-incrimination. The trial court did not err in denying Truong's motion to suppress his statement to the police.

5. Neither defendant was denied a fair trial when the jury heard a police officer's comment regarding Nguyen's exercise of his right to silence during custodial interrogation because the comment was not elicited by the prosecutor, the prosecutor during closing argument did not mention Nguyen's exercise of his constitutional rights, the evidence that the defendants shot the decedent was overwhelming, and the comment did not undermine the defendants'. self-defense theory.

6. The evidence was sufficient for a rational factfinder to find beyond a reasonable doubt that the prosecution disproved Nguyen's theory of self-defense. The trial court properly focused on what constitutes self-defense under "Anglo-American" law.

7. Trial counsel's representation of Nguyen was effective.

8. Nguyen was not denied a fair trial as a result of certain comments by the prosecutor during closing argument.

9. The trial court's failure to give an unrequested jury instruction in connection with Nguyen's self-defense theory that a person has no duty to retreat from the person's place of business is not grounds for reversal. The failure of Nguyen's counsel to request the instruction, which was inapplicable to the facts of the case, did not constitute ineffective assistance of counsel.

Affirmed.

1. CONFLICT OF LAWS — SUPREMACY CLAUSE.

A state probate court's determination of an immigrant's age, as an exercise of the state's police power to determine age and not involving any immigration matter, does not interfere with Congress' authority over immigration or violate the Supremacy Clause, even though the Immigration and Naturalization Service has made a different determination regarding the immigrant's age (US Const, art VI, cl 2).

2. TRIAL — INTERPRETERS.

The proceedings or testimony at a trial where an interpreter is employed generally are to be interpreted in a simultaneous, continuous, and literal manner, without delay, interruption, omission from, addition to, or alteration of the matter spoken, so that the participants receive a timely, accurate, and complete translation of what has been said; although occasional lapses will not render a trial fundamentally unfair, adequate translation of trial proceedings

requires translation of everything relating to the trial that someone conversant in English would be privy to hear.

3. CRIMINAL LAW — INTERPRETERS.

A person speaking to the police through a translator is subject to the same standards as a person fluent in English; there is no greater obligation on the part of the police to ascertain comprehension of *Miranda* rights with respect to a person using a translator than with respect to a person fluent in English.

4. CRIMINAL LAW — TRIAL — PROSECUTORIAL COMMENT — SELF-INCRIMINATION.

It is generally inappropriate for the prosecution to comment regarding an accused's exercise of the constitutional privilege against self-incrimination; however, reversal is not required where such a comment is not a studied attempt by the prosecution to place the matter before the jury.

5. CONFLICT OF LAWS — CRIMINAL LAW.

Although other cultures may adopt legal doctrines that differ from American legal doctrines, such as what constitutes self-defense, people in America are bound to abide by American legal doctrine and American courts are obligated to apply such doctrine.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for Tuan Truong.

*Martin J. Beres,* for Tai Van Nguyen.

AFTER REMAND

Before: McDONALD, P.J., and MARKMAN and C. W. JOHNSON,* JJ.

MARKMAN, J. Defendants appeal as of right their 1992 jury trial convictions of first-degree murder, MCL 750.316; MSA 28.548, and possession of a fire-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

arm during the commission of a felony, MCL
750.227b; MSA 28.424(2). The Court of Appeals con-
solidated the appeals. The Court of Appeals granted
Truong's motion to remand to the trial court to allow
him to move for a new trial and seek other relief.
Unpublished order of the Court of Appeals, entered
April 14, 1994 (Docket No. 162306). On remand, the
trial court denied Truong's motions. The Court of
Appeals granted Nguyen's motion to remand to the
trial court to allow him to move for a new trial.
Unpublished order of the Court of Appeals, entered
November 8, 1994 (Docket No. 162307). On remand,
the trial court denied Nguyen's motion. After remand,
we affirm.

Defendants both shot at the decedent, who died of
multiple gunshot injuries. Defendants, who had had
previous altercations with the decedent, claimed that
they shot him in self-defense. They testified that, two
days before the shooting at issue, the decedent and
some of his friends broke into defendants' apartment
and beat them up while searching for the decedent's
gun, which defendant Nguyen had stolen. Defendant
Truong testified that the decedent threatened to kill
them the next time that he saw them.

On appeal, Truong first claims that his convictions
should be vacated because the circuit court did not
have valid jurisdiction over him because he was only
fourteen years old at the time of the offense. He ini-
tially raised this issue in a suppression hearing before
trial and it was one of the issues on which this Court
remanded this matter to the circuit court after trial.
Truong's immigration papers list his birth year as
1978. Before he was arrested, however, he success-
fully petitioned the Kent County Probate Court to cor-

rect his birth date to May 5, 1974. Among the evidence presented to the probate court by Truong was a letter from a dentist indicating that, on the basis of his dental radiographs, Truong was at least sixteen years old in July 1990. A caseworker who assisted Truong when he moved to Michigan testified that Truong consistently told her that he was born in 1974. Truong now contends that he was lying when he petitioned the probate court to change his birth date and that he did so only to make himself appear eighteen years old to facilitate getting a job.[1] On remand, Truong produced a document purporting to be a birth certificate that indicates a birth date of June 4, 1978. This differs from his resident alien card, which lists his birth date as December 31, 1978. The birth certificate and immigration papers also differ regarding the birth dates of his parents.

The trial court held that the probate court order raised a rebuttable presumption that Truong's birth date was May 5, 1974. It found that Truong failed to produce evidence to overcome this presumption. The trial court correctly held that the birth certificate did not meet the self-authentication requirements of MRE 902(3). It also found the birth certificate untrustworthy because it was a report of a birth made eleven years after the alleged birth, when Truong's father may have had an incentive to make Truong appear as young as possible to facilitate his emigration from

---

[1] Truong contends that the trial court should have granted relief from the probate court judgment on the basis of Truong's admitted fraud on that court pursuant to MCR 2.612(C)(1)(f) or (C)(3). However, if Truong seeks relief from the probate court order, the appropriate remedy would appear to be for him to petition the probate court directly for such relief, so that the court that received the evidence and entered the order may consider the effect of his current contention that he lied.

Vietnam. The trial court denied Truong's motion for a new trial or for relief from judgment.

This Court reviews trial court findings of fact for clear error. MCR 2.613(C). The trial court reasonably found that the probate court order, solicited by Truong himself and supported by dental and other evidence, raised a rebuttable presumption regarding his age that the birth certificate and immigration papers were insufficiently reliable to overcome. Therefore, we find no clear error in the trial court's reliance on the probate court's determination of Truong's age.

Truong also now claims, for the first time, that the trial court's reliance on the birth date indicated in the probate court order violated the Supremacy Clause, US Const, art VI, cl 2. "Generally, the existence of federal laws or regulations in a particular area can preempt state action in the same field where preemption is either express, implied, or the result of a conflict between state and federal law." *People v Hegedus*, 432 Mich 598, 607; 443 NW2d 127 (1989). "Consideration of any issue arising under the Supremacy Clause begins with the assumption that the historic police powers of the state are not to be superseded by federal law unless that is the clear and manifest purpose of Congress." *Ryan v Brunswick Corp*, 209 Mich App 519, 521; 531 NW2d 793 (1995), lv gtd 451 Mich 883 (1996).

States have the authority to determine the age of their residents. The historic police power of a state to determine age is necessary to state governance of such issues as compulsory education, marriage, eligibility for public benefits, and driver's licenses. The

United States Constitution does not bar states from making such determinations.

However, Congress has broad authority to regulate matters relating to immigration, *Graham v Richardson*, 403 US 365, 379; 91 S Ct 1848; 29 L Ed 2d 534 (1971), and age is a factor that may sometimes bear on an alien's immigration status. Accordingly, we must decide if a state determination of an immigrant's age, which differs from an Immigration and Naturalization Service (INS) determination, interferes with the exercise of federal authority over immigration.[2]

Here, the probate proceeding at issue merely determined Truong's age, not any immigration matter. Truong has presented this Court with no authority that would preclude a state from making, for any of a variety of legal purposes, a determination of the age of one of its citizens or residents. The fact that a person's age may also have consequences for immigration matters, e.g., when or how the person may apply for citizenship, does not make a state's determination of an immigrant's age an infringement on Congress' authority over immigration. There is nothing in the probate court's order here that impinges upon the ability of the INS to fully carry out its responsibilities. Similarly, the conviction of an alien for a felony might affect the alien's immigration status, but such consequences do not preclude states from prosecuting aliens on felony charges. State determinations that have such incidental consequences on immigration do not usurp federal authority over immigration. Indeed,

---

[2] To characterize the INS as having "determined" Truong's age probably suggests more of an affirmative investigation on the part of the INS than the facts here indicate. In "determining" Truong's age, the INS apparently accepted at face value information provided by Truong.

we recognize that the INS could, if it so chose, continue to rely on its own determination of Truong's age for immigration purposes.[3] Parties must meet a heavy burden to establish a Supremacy Clause violation as the result of a state's legitimate exercise of the police power. *Ryan, supra.* Here, Truong argues generally that age bears on an alien's immigration status but fails to demonstrate how the probate court's determination of his age has affected his immigration status in any manner. There is no indication that the authority of the INS over immigration has been, or will be, compromised in any way by the probate court's determination of Truong's age. Truong accordingly fails to establish a Supremacy Clause violation. For these reasons, we find that the probate court's determination of Truong's age was not preempted by Congress' authority over immigration matters.

Truong next claims that he was denied simultaneous translation of the trial proceedings in violation of his constitutional rights to due process, confrontation, and to be present at trial. The trial court found that there was a word-for-word translation of all questioning of witnesses but that there may have been instances where the translator summarized attorney colloquy. The only mistranslations, however, cited by Truong were with respect to the translation of his testimony to the jury.[4] The court concluded that Truong

---

[3] However, we believe that if the INS reconsidered the issue on the basis of the physical evidence available to the probate court, it would likely agree with the birth date determined by the court. We also believe that defendant Truong has a much greater incentive to falsify his age in the instant context than when he sought probate court redetermination of his age.

[4] There was evidence that individual words in Truong's testimony were mistranslated to the jury (e.g., the threat from the decedent that he would

received a fair trial in light of all the circumstances and denied Truong's motion for a new trial or for relief from the judgment.

This Court recently addressed this issue in *People v Cunningham*, 215 Mich App 652, 654-655; 546 NW2d 715 (1996), in which it stated:

> As a general rule, the proceedings or testimony at a criminal trial are to be interpreted in a simultaneous, continuous, and literal manner, without delay, interruption, omission from, addition to, or alteration of the matter spoken, so that the participants receive a timely, accurate, and complete translation of what has been said. Although occasional lapses will not render a trial fundamentally unfair, adequate translation of trial proceedings requires translation of everything relating to the trial that someone conversant in English would be privy to hear. [Citation omitted.]

The evidence here indicated that a translator was present during all stages of this matter and that Truong received a word-for-word translation of all questions to and answers from witnesses. The only evidence of summarized translation to Truong was during attorney colloquies. At most, these constituted occasional, minor lapses in simultaneous translation that, under *Cunningham*, did not render the trial unfair or deprive Truong of his rights to due process, confrontation, or to be present at trial.

Truong next claims that the trial court erred in denying his motion to suppress his statement to the police. He contends that he did not knowingly, intelligently, and voluntarily waive his constitutional right to counsel or privilege against self-incrimination. He

---

"shoot" defendants was translated that he would "kill" them). These imperfect translations did not prejudice defendants, and, if anything, aided their claim of self-defense.

contends that his lack of basic language skills made it impossible for him to understand the translation of the *Miranda*[5] rights. The trial court found that the police read him his rights, a translator translated them into Vietnamese, defendant said that he understood them, and he signed and initialed the waiver form. It found that Truong then proceeded to respond to police questions in a logical manner that belied any claim that he did not understand what was being asked of him. The court noted that Truong did not allege that the police coerced him or made any false promises to him and acknowledged that he understood the words used in translating the rights to him, but contended that he did not understand the meaning of the rights. The court held that the translator appropriately attempted to translate the rights word-for-word instead of trying to explain them. It found that the police were within their rights in taking Truong at his word that he understood the rights and waived them, in this context. It concluded that Truong's statement to the police was voluntary.

This Court reviews trial court rulings regarding suppression motions under the clearly erroneous standard. *People v Bordeau*, 206 Mich App 89, 92; 520 NW2d 374 (1994). However, "[a]pplication of constitutional standards by the trial court is not entitled to the same deference as factual findings." *Id.*

In *People v Garwood*, 205 Mich App 553, 556; 517 NW2d 843 (1994), this Court cited with favor the following language from *Colorado v Spring*, 479 US 564, 573; 107 S Ct 851; 93 L Ed 2d 954 (1987):

---

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

> First the relinquishment of the right must have been vol-
> untary in the sense that it was the product of a free and
> deliberate choice rather than intimidation, coercion, or
> deception. Second, the waiver must have been made with a
> full awareness both of the nature of the right being aban-
> doned and the consequences of the decision to abandon it.
> Only if the "totality of the circumstances surrounding the
> interrogation" reveal both an uncoerced choice and the req-
> uisite level of comprehension may a court properly con-
> clude that the *Miranda* rights have been waived.

Here, the evidence bears out the trial court's findings summarized above. By his own admission, Truong understood the words used in translating the rights, told the police that he understood the rights, signed and initialed the waiver form, did not request any clarification, and responded in a logical manner to the subsequent questioning by the police. We emphasize that a person speaking to the police through a translator is subject to the same standards as a person fluent in English. There is no greater obligation on the part of the police to ascertain comprehension of *Miranda* rights with respect to a person using a translator than with respect to a person fluent in English. The trial court did not clearly err in determining that Truong had a requisite level of understanding under these circumstances.

Truong next claims that he was denied a fair trial when the jury heard evidence that codefendant Nguyen exercised his right to silence during a custodial interrogation. He claims that this information raised an improper inference that Nguyen had something to hide that tainted the proceedings against Truong as well. Improper testimony concerning a codefendant's assertion of constitutional rights may prejudice a defendant's defense to the extent that

reversal of the defendant's conviction is required. *People v Gallon*, 121 Mich App 183, 191; 328 NW2d 615 (1982). Here, the prosecutor questioned a police officer regarding Nguyen's interview and the fact that it was interrupted for a gun residue test. The prosecutor asked if "no further interviewing took place" after the test and the officer responded affirmatively and continued, "at that point [Nguyen] said that he wanted an attorney and didn't want to talk to us anymore." Neither defendant objected to this exchange. When preserved, this Court reviews claims of prosecutorial misconduct by evaluating the prosecutor's comments in context to determine if the defendant was denied a fair and impartial trial. *People v Allen*, 201 Mich App 98, 104; 505 NW2d 869 (1993). This Court is precluded from review of prosecutorial misconduct allegations that were not objected to at trial unless the prejudicial effect could not have been cured by a jury instruction or failure to consider the issue would result in manifest injustice. *Id.*

It is generally inappropriate for the prosecution to comment regarding an accused's exercise of the constitutional privilege against self-incrimination. *People v Sain*, 407 Mich 412, 415; 285 NW2d 772 (1979). However, reversal is not required where such a comment is not a "studied attempt by the prosecution to place [the] matter before the jury." *Id.* Here, the prosecutor's question required only a "yes" or "no" answer and did not elicit the officer's comment regarding Nguyen's exercise of his constitutional rights. Further, Nguyen's exercise of his constitutional rights was not mentioned by the prosecutor during closing argument. This trial involved overwhelming evidence that defendants shot the decedent; defendants' sole theory

was self-defense. The comment at issue did not undermine their self-defense theory. Under these circumstances, the comment did not deprive Nguyen of a fair trial. As a consequence, it did not deprive Truong of a fair trial.

We now turn to Nguyen's claims on appeal. Nguyen first claims that there was insufficient evidence to disprove his self-defense claim. To review claims of insufficiency of the evidence to sustain a verdict, this Court views the evidence in the light most favorable to the prosecution to determine if a rational factfinder could find the essential elements of the crime proved beyond a reasonable doubt. *People v Reddick*, 187 Mich App 547, 551; 468 NW2d 278 (1991). "Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime." *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).

In *People v Fortson*, 202 Mich App 13, 19-20; 507 NW2d 763 (1993), this Court held:

> "[T]he killing of another in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Heflin*, 434 Mich 482, 502; 456 NW2d 10 (1990). Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt.

Here, while defendants had reason to fear the decedent on the basis of prior assaults and threats, the evidence did not indicate that they were in imminent danger from him at the time they shot him. A gun was found on the decedent, but it was in still in his waistband. Evidence demonstrated that defendants shot the decedent eight times in the back. At a posttrial

hearing regarding Nguyen's motion for a new trial, the trial court aptly stated:

> [D]efendants executed what might be called a preemptive strike on a man who had previously beaten them and threatened them, and shot him in the back before he could come around and bother them again. Whatever else it may be, a preemptive strike is not, under Anglo-American law, any form of self-defense.

We specifically affirm the trial court's focus on "Anglo-American" law. We recognize that other cultures may have adopted legal doctrines that differ from American legal doctrine — as in what constitutes self-defense, for example. However, persons in America are bound to abide by American legal doctrine and American courts are obligated to apply such doctrine. Accordingly, the evidence was sufficient for a rational factfinder to find beyond a reasonable doubt that the prosecution disproved Nguyen's self-defense theory.

Nguyen next argues that he was denied effective assistance of counsel. His main contention is that his rejection of a plea to the lesser offense of second-degree murder resulted from ineffective assistance of counsel. In order to justify reversal of an otherwise valid conviction on the basis of ineffective assistance of counsel, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994).

The trial court considered this claim in a posttrial motion for a new trial, which it denied. Nguyen's trial

counsel testified that he recommended that Nguyen consider the plea bargain, that he explained the meaning of mandatory life (the maximum penalty if Nguyen went to trial), and that he went to the prison with an interpreter on at least one occasion.[6] He testified that Nguyen indicated that he understood the plea bargain but would not plead guilty because he felt he had not done anything wrong. The trial court recalled that on the morning of the trial, it allowed defense counsel additional time with defendants to resolve the matter but counsel "insisted with some exasperation that their clients were adamant that they would not admit guilt." It found that Nguyen's counsel met regularly with him and clearly laid out the options and that Nguyen understood the options. It concluded that trial counsel's representation of Nguyen was effective. We agree. Nguyen's other claims of ineffective assistance of counsel are conclusory claims relating to alleged failures to prepare for trial, appropriately cross-examine witnesses, and object to hearsay testimony. Here, the only disputed issue was whether defendants acted in self-defense. In the context of overwhelming evidence that they were not in *immediate* fear for their lives, any such errors did not prejudice Nguyen's right to a fair trial. Accordingly, they do not constitute ineffective assistance of counsel.

Nguyen next claims that the prosecutor engaged in misconduct during closing argument by vouching for the truthfulness of witnesses, denigrating Nguyen, and making a civic-duty argument. Here, there was no objection to the prosecutor's argument. The disputed

---

[6] Nguyen, unlike Truong, was fluent in English.

comments were simply arguments based on the evi-
dence. The prosecutor neither vouched for witnesses
nor denigrated Nguyen. His final comment that "on
behalf of the Wyoming Police Department and on
behalf of the State of Michigan, I am asking you to
convict Tai Van Nguyen" was not a "civic-duty" argu-
ment because it neither injected issues broader than
Nguyen's guilt or innocence of the charges nor
encouraged the jurors to suspend their powers of
judgment. See *People v Crawford*, 187 Mich App 344,
354; 467 NW2d 818 (1991). Accordingly, none of the
disputed comments denied Nguyen a fair trial. See
*Allen, supra.*

Finally, Nguyen contends that the trial court
improperly failed to instruct the jury in connection
with his self-defense theory that a person has no duty
to retreat from his place of business. He also claims
that his counsel was ineffective in failing to request
such an instruction.

In *People v Dabish*, 181 Mich App 469; 450 NW2d
44 (1989), this Court contemplated possible exten-
sions of the rule that there is no duty to retreat and
avoid using deadly force in one's home. It considered
*People v Johnson*, 75 Mich App 337; 254 NW2d 667
(1977), in which a private security guard was found to
have no duty to retreat when acting in the course of
his employment, and *People v Crow*, 128 Mich App
477; 340 NW2d 838 (1983), in which a defendant was
found not to have a duty to retreat from his car when
attacked by a hitchhiker. *Dabish* at 475-476. The *Dab-
ish* Court concluded at 476:

> Presently, Michigan simply does not apply a broad rule
> allowing no-retreat from a place of business.

Here, Nguyen testified that he worked part-time at the restaurant where the shooting occurred but that on the day at issue he told his boss he could not work. Because he was not working at the time of the shooting, the present case does not properly raise the issue whether the "no retreat" rule should be extended to one's place of business. Here, Nguyen did not request such an instruction. The failure of a trial court to instruct on any point of law is not grounds for setting aside a jury verdict unless such an instruction is requested by the accused. MCL 768.29; MSA 28.1052. Trial counsel's failure to request an instruction inapplicable to the facts at bar does not constitute ineffective assistance of counsel. See *Pickens, supra.*

For these reasons, we affirm defendants' judgments of sentence.

Affirmed.