# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALBERT DWAYNE ALLEN,

Defendant-Appellant.

UNPUBLISHED
May 26, 2016

No. 324710
Macomb Circuit Court
LC No. 2014-001488-FH

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALBERT DWAYNE ALLEN,

Defendant-Appellant.

No. 324711
Macomb Circuit Court
LC No. 2014-001016-FH

Before: GADOLA, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

In these consolidated cases, defendant was convicted of delivering hydrocodone, MCL 333.7401(2)(b)(*ii*), possession with intent to deliver hydrocodone, MCL 333.7401(2)(b)(*ii*), possession of marijuana, MCL 333.7403(2)(d), and maintaining a drug house, MCL 333.7405(1)(d). For the reasons stated in this opinion, we affirm.

On February 14, 2014, defendant sold 31 hydrocodone pills to an undercover police officer. The sale occurred outside defendant's home. Thereafter, undercover officers from the special investigations division (SID) conducted surveillance of the home. According to their testimony, on March 3, 2014, the surveillance officers observed what appeared to be three separate drug transactions. In each instance, a suspected buyer stopped in front of defendant's house, and defendant emerged from the house and made a quick exchange with the suspected buyer. Uniformed officers conducted a traffic stop on one of the suspected buyers and discovered that she was in possession of several pills. The suspected buyer testified at trial that she had just purchased 16 Vicodin (hydrocodone) pills from defendant. After the traffic stop, the

-1-

police executed a search warrant at defendant's home. The record reflects that, during the search, the police found marijuana, numerous pills in a variety of different places, pill bottles, and several unused zip-seal plastic baggies.

Although defendant did not testify, his wife and stepdaughter testified on his behalf. His wife testified that defendant was with her and several others on February 14, 2014, when the alleged sale to the undercover officer occurred. His stepdaughter testified that defendant was not at home between 7:00 p.m. and 11:00 p.m. that night. Additionally, defendant's wife testified that the pill bottles in the house belonged to her and that she had a prescription for them. She also testified that some of the pills found belonged to a tenant living in their home.

Defendant argues that his convictions were against the great weight of the evidence.[1] We disagree.

In evaluating whether a verdict is against the great weight of the evidence, the question is whether the evidence preponderates so heavily against the verdict that it would be a serious miscarriage of justice to allow the verdict to stand. *People v Lemmon*, 456 Mich 625, 642, 647; 576 NW2d 129 (1998). Defendant essentially argues that the jury should have believed his wife and his stepdaughter. However, conflicting testimony and questions regarding the credibility of witnesses are not sufficient grounds for granting a new trial. *Id*. at 643.

The jury heard the testimony that defendant was not home on February 14. They also heard from defendant's wife's testimony that he did not sell drugs, that their tenant owned the jackets where some pills were found, and that defendant's wife owned the other pills. Defense counsel questioned the police officers about their vantage points on the night of February 14, emphasized that defendant's wife's name was on pill bottles found in the house, and questioned the propriety of the police investigation. Further, although defendant presented an alibi defense for the February 14 sale to an undercover officer, two SID police officers identified defendant as the individual who sold the hydrocodone pills to the officer. They also testified that the drug transaction occurred outside defendant's house. "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). We defer to the jury's determination of credibility "unless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities[.]" *Lemmon*, 456 Mich at 644-646 (internal citation omitted). Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

---

[1] We review the trial court's decision denying defendant's motion for a new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). A trial court abuses its discretion "when its decision falls outside the range of principled outcomes." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012).

Defendant next argues that the prosecutor failed to present sufficient evidence to support his convictions of possession with intent to deliver hydrocodone, possession of marijuana, and maintaining a drug house because there was no credible evidence that he possessed any of the drugs found in the house or that he intended to deliver the hydrocodone.[2] We disagree.

Proof of physical possession is unnecessary. *People v Konrad*, 449 Mich 263, 271; 536 NW2d 517 (1995). Possession may be either actual or constructive, and it may be joint or exclusive. *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992). "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id*. at 521. "[A] person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession." *Id*. at 520. "Instead, some additional connection between the defendant and the contraband must be shown." *Id.*

Viewed in a light most favorable to the prosecution, the circumstantial evidence established a sufficient nexus between defendant and the contraband discovered in his home. Defendant does not dispute that he lived in the house where the contraband was found. There was evidence that, approximately two weeks before the house was searched, defendant sold hydrocodone to an undercover officer outside his residence. During the subsequent surveillance, SID officers observed defendant emerge from his house and engage in what, based on their experience and training, appeared to be three separate drug transactions. One suspected buyer was stopped. She testified that she had purchased the hydrocodone pills found on her from defendant. During the search of defendant's house, which occurred within hours of that sale, the police found numerous pills in a variety of places in the house, 11.5 grams of marijuana, pill bottles, and unused zip-seal plastic baggies. Additional pills were found on defendant when he was arrested. Taken together, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant had possession of the contraband in his house. Although defendant relies on his wife's testimony, credibility decisions are for the jury to determine. *Lemmon*, 456 Mich at 642. There was sufficient evidence to support the jury's conclusion that defendant possessed the drugs in his house.

There is also sufficient evidence to show intent to deliver. Proof of actual delivery is not required. *Wolfe*, 440 Mich at 524. "Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Id*. Here, the police discovered numerous pills, pill bottles, and unused zip-seal plastic baggies inside defendant's house. Two SID officers

---

[2] When ascertaining whether sufficient evidence was presented at trial to support a conviction, we view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v Truong (After Remand)*, 218 Mich App 325, 337; 553 NW2d 692 (1996). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

testified that, based on their training and experience in narcotics trafficking, the zip-seal baggies and pill bottles are used to hold the designated amount of pills, and those types of baggies are indicative of narcotic sales. There was also evidence that defendant had sold 31 hydrocodone pills to an undercover officer and 16 Vicodin (hydrocodone) pills to a different buyer shortly before the search of his home. Viewed in a light most favorable to the prosecution, the circumstantial evidence was sufficient to establish that the hydrocodone in defendant's home was intended for delivery.

Defendant also argues that the prosecutor engaged in misconduct when he asked defendant's wife to comment on the credibility of a police officer, suggested that defense counsel was seeking to mislead the jury, and improperly appealed to the jury's sympathy during closing argument.[3] We disagree.

During the prosecutor's case-in-chief, a police officer testified that he had previously observed defendant wearing one of the jackets in which pills were found. On direct examination, defendant's wife testified that the jackets belonged to their tenant. During cross-examination of defendant's wife, the prosecutor asked, "If an officer has testified that he has seen your husband wearing that coat recently, in the last year and-a-half, are you saying that that officer is lying?" Defendant's wife answered, "yes."

Defendant correctly points out that it is improper for the prosecutor to ask a witness to comment on the credibility of another witness because credibility is a determination for the trier of fact. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). In *Buckey*, our Supreme Court noted that this type of error is harmless where the witness "dealt rather well with the questions," and it is not clear how the questioning harmed the defendant. *Id*. In this case, there is nothing in the record that suggests defendant was harmed by the prosecutor's isolated question. Further, regardless of who supposedly owned the jackets, several pills were found in other locations in the house, and defendant was observed engaging in drug transactions. It was apparent throughout the trial that the defense witnesses and the prosecution witnesses gave conflicting testimony. Thus, the jury was aware that the parties disagreed on crucial facts at issue. Finally, the trial court instructed the jury that it was to assess the credibility of the witnesses and determine who to believe. Accordingly, reversal is not warranted based on the prosecutor's questioning of defendant's wife.

Defendant also argues that the prosecutor's use of the phrase "smoke and mirrors" during closing argument suggested that his attorney was intentionally seeking to mislead the jury. Although a prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury, *People v Dalessandro*, 165 Mich App 569, 580; 419 NW2d 609 (1988), a "prosecutor may fairly respond to an issue raised by the defendant." *People v Brown*, 279 Mich

---

[3] This Court reviews de novo issues of prosecutorial misconduct to determine whether the defendant was denied a fair and impartial trial. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

App 116, 135; 755 NW2d 664 (2008). Prosecutors may argue the evidence and all reasonable inferences that arise from the evidence as they relate to their theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). They need not state their inferences in "the blandest possible terms." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

The prosecutor argued:

> Specifically, as far as *the smoke and mirrors* that in this case was brought out, if you look at the testimony of Officer Roy, he came in and testified I found the mail in the back room. The defense attorney wanted to make a big deal that the evidence tech took the pictures of those resident's papers in the other bedroom, but the officers told you, that wasn't the case. So as far as an indication of the police trying to set something up, or make this out to be something more, the officer told you, Officer Roy said no, those, that's not where those envelopes were. In addition, that's not where the tin or the heroin was located, that's not where that was either, it's just where it was photographed. [Emphasis added.]

Viewed in context, the prosecutor's comments did not suggest that counsel was trying to mislead the jury. Defense counsel had elicited from an officer that mail addressed to defendant was found in a room in the rear of the house, but was brought to a detective in another room for tabulation. It was then photographed by the evidence technician on the floor of the northwest bedroom, which was a room where drugs were discovered. Defense counsel asked the officer, "So the mail was moved from the back room to try to connect these individuals to the drugs in that room, was it not." The prosecutor's comments were responsive to that line of questioning, and it was based on reasonable inferences from the evidence. The use of the phrase "smoke and mirrors" did not in and of itself make the argument improper and does not mandate reversal in this case.

Defendant next argues that during rebuttal argument, the prosecutor improperly appealed to the jury's sympathy and "general fear of crime" when he made the following comments:

> [The police] did an investigation. They did, they set up a hand-to-hand. It's not as though they came in and said, yeah, it looks like a drug trafficking house, it was very busy, you know, it appeared—we didn't see the drugs, we didn't seize any drugs, but it looked like it, and when we got the search warrant, based on just watching what appeared to be hand-to-hands, we, they looked like drugs. No. This was a thorough investigation.

> *  *  *

> As far as the testimony, you've seen it. You will have the opportunity to review all of the evidence, all the pills that we have given you that are sealed. You can look at them. You can think about the testimony of each of the individuals, share your opinion with one another. When you're thinking about it, use your common sense.

> *When you're living next to somebody that has multiple hand-to-hands, and you call the police, and you do an anonymous tip, what do you expect the police*

-5-

*to do?  Would you expect them to do an investigation just like this one if this was going on in the house next-door to you.*  I believe that after you think about this and after you weigh out the testimony and after you look at the evidence, you will, in fact, feel that, just like [a detective] said, this was a full, fair investigation.  [Emphasis added.]

Although prosecutors may not resort to arguments that ask jurors to sympathize with the victim, *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001), in this case the prosecutor did not ask the jury to convict defendant based on emotions or sympathy.  Viewed in context, the prosecutor made a permissible argument responding to defendant's argument that the police did not give defendant "a fair, full and complete investigation."  The prosecutor's argument, which urged the jurors to use their common sense in evaluating how the police handled its investigation, was not improper.  Moreover, a timely objection to the challenged remarks could have cured any perceived prejudice by obtaining an appropriate cautionary instruction.  See *id*. at 586.  The prosecutor's comments during rebuttal argument were not grounds for reversal.

Finally, defendant argues that defense counsel was ineffective for failing to move to dismiss the possession of marijuana charge under the Michigan Medical Marihuana Act, MCL 333.26421 *et seq.*, because defendant obtained a medical marijuana card.  However, it is undisputed that defendant did not obtain his medical marijuana card until after the charged conduct occurred.  Accordingly, any motion to dismiss the marijuana charge would have been futile.  Counsel is not ineffective for failing to advance a meritless position.  *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).  We also reject defendant's suggestion that defense counsel was ineffective for failing to use the medical marijuana registry card as part of his defense strategy.  Despite being aware of the card's existence, defense counsel opted to argue that the marijuana in the house did not belong to defendant.  He also challenged the propriety of the police investigation.  Decisions about what evidence to present are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

Affirmed.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro