# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 14, 2016

Plaintiff-Appellee,

v

No. 316879
Macomb Circuit Court

SAAD AKRAM BAHODA,

LC No. 2011-003631-FC

Defendant-Appellant.

Before: TALBOT, C.J., and MURRAY and SERVITTO, JJ.

PER CURIAM.

Defendant was charged with assault with intent to commit murder, MCL 750.83. A jury convicted him of the lesser offense of assault with intent to do great bodily harm less than murder, MCL 750.84, for which he was sentenced as a second-offense habitual offender, MCL 769.10, to 3 to 15 years in prison, to be served consecutive to a sentence defendant was serving while on parole. The trial court denied defendant's posttrial motions for a new trial due to ineffective assistance of counsel and declined to conduct a *Ginther*[1] hearing. We affirm.

## I. BACKGROUND FACTS

Defendant's conviction arose from an incident at a "hookah lounge" located next to a restaurant where defendant was attending a family function. Defendant left the restaurant, intervened in a fight between his nephew and Nadeem Edward, and ended up cutting Edward with a pocketknife. Defendant testified at trial that he used his knife against Edward in self-defense. Defendant filed two posttrial motions for a new trial based on ineffective assistance of counsel. One motion was filed by counsel and alleged that trial counsel, Steven Kaplan, was ineffective for failing to request a jury instruction on self-defense. The other motion was filed by defendant and alleged additional claims against Kaplan, as well as claims against two other attorneys, Robert Berg, who previously represented defendant,[2] and Brian Legghio, who

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

[2] The offense occurred while defendant was on parole from a life sentence, thereby subjecting him to consecutive sentencing. MCL 768.7a(2). In an apparent attempt to prevent defendant's return to prison, defendant's sister, Ekbal "Kim" Attisha, and his girlfriend, Natalie Allie, obtained affidavits from Edward and two witnesses in which they claimed to have misidentified

-1-

allegedly consulted defendant, but never represented him. The trial court denied both motions without conducting a *Ginther* hearing even though the parties had initially agreed to a *Ginther* hearing on the issue raised in counsel's motion.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Effective assistance of counsel is presumed and the defendant bears a heavy burden of proving otherwise. *People v Eloby (After Remand)*, 215 Mich App 472, 476; 547 NW2d 48 (1996). To establish that a defendant's right to the effective assistance of counsel was so undermined that it justifies reversal of an otherwise valid conviction, the defendant must show that counsel's representation fell below an objective standard of reasonableness and that the representation so prejudiced the defendant as to deprive him of a fair trial. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Stanaway*, 446 Mich 643, 687-688; 521 NW2d 557 (1994). Whether a defendant has been denied the effective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, but this Court determines de novo whether the facts properly found by the trial court establish ineffective assistance of counsel. *Id*.

### A. ATTORNEY BERG

Berg, who represented defendant for a period of time but withdrew before trial, filed a motion seeking to have Edward and two witnesses view a lineup to show that they were unable to identify defendant. The motion was supported by the false affidavits.

Defendant contends that Berg made a serious error by presenting the false affidavits because he offered them to establish a defense of misidentification when the "real" defense was self-defense. Defense counsel has a duty to investigate all potentially viable defenses and to present all substantial defenses. *People v Shahideh*, 277 Mich App 111, 118; 743 NW2d 233 (2007), rev'd on other grounds 482 Mich 1156 (2008). Defense counsel can be ineffective if he settles on a defense strategy without any prior investigation of the case. *People v Trakhtenberg*, 493 Mich 38, 43; 826 NW2d 136 (2012). Ineffective assistance of counsel can take the form of a failure to investigate and present a particular defense if the defendant made a good-faith effort to avail himself of a substantial defense. *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id.*

The record shows that Berg argued that the witnesses had mistakenly identified defendant as the person who cut Edward. By the time of trial, defendant testified that he struck Edward

defendant. Berg submitted these to the court. Further investigation showed that Edward's affidavit was executed under duress and the other two affidavits were forgeries. Apparently the prosecutor considered charging defendant and Allie with witness tampering or obstruction of justice. Defendant denied any involvement in the false affidavit scheme and moved to exclude the affidavits from evidence at trial. Although defendant's motion in limine was denied, evidence of the false affidavit scheme was not presented at trial.

with his knife, but did so in self-defense. There is nothing in the record to show that defendant ever claimed that he acted in self-defense during the time he was represented by Berg and counsel "cannot be found ineffective for failing to pursue information that his client neglected to tell him." *People v McGhee,* 268 Mich App 600, 626; 709 NW2d 595 (2005). Even assuming Berg should have known that defendant intended to pursue a defense of self-defense rather than mistaken identity, defendant was not prejudiced by the error because he was able to proceed with his chosen defense at trial.

Defendant also contends that Berg made a serious error by presenting the false affidavits because the circumstances surrounding their production led to suspicion that defendant was involved and that in turn led to the possibility that he could be charged with additional offenses. Defendant contends that he was prejudiced because those possible charges prevented him "from negotiating a favorable plea agreement" in that a "chance for a misdemeanor plea offer . . . was taken off the table." This claim is not supported by the record. The record indicates that Berg and subsequent counsel pursued plea negotiations on behalf of defendant, who hoped for "a low enough charge" that would allow him to "serve County Jail time," but no agreement was ever reached. The record does not indicate that a plea to a misdemeanor offense was offered and revoked.

Defendant also argues that Berg made a serious error by presenting the false affidavits because it turned out that Allie was involved in their procurement. According to defendant, that in turn led to the possibility that Allie could be criminally charged and it was only due to a grant of immunity that she testified against defendant. Defendant has not shown that he was prejudiced by the alleged error. There is nothing to indicate that Allie would not have testified against defendant but for the alleged grant of immunity and the testimony she provided established only that defendant was at the restaurant, that he went to the lounge after being informed that his nephew needed his help, and that he later left and went home, which corresponds with defendant's own testimony. Allie had no information regarding what happened when defendant went to the lounge and thus her testimony did not disprove or otherwise call into question defendant's testimony that he acted in self-defense, or Kaplan's argument that defendant lacked the requisite intent to commit murder or inflict great bodily harm.

We also reject any suggestion that defendant was prejudiced, not by the fact that Allie testified against him, but by the fact that her decision to testify "completely eliminated the possibility of a 'misidentification' defense." Apart from the fact that this contention is completely contrary to defendant's claim that self-defense, not misidentification, was the "*real* defense," defendant does not clearly explain how the prosecutor's decision to call Allie prevented him from claiming misidentification as a defense. Nor does defendant clearly explain how this rendered Berg's representation ineffective. While Berg revealed the existence of the affidavits by using them to support his motion for a lineup, defendant does not contend and has not shown that but for Berg's action, the false affidavit scheme would not have been discovered. Further, Berg had withdrawn from the case long before Allie obtained the alleged grant of immunity and it was Kaplan who apparently decided against using the misidentification defense that Berg had contemplated. Therefore, the record does not support defendant's claim of ineffective assistance of counsel against Berg.

B. ATTORNEY KAPLAN

Defendant's primary complaint against Kaplan is that he did not request an instruction on self-defense after defendant testified that he acted in self-defense. "Failing to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). However, the trial strategy must be sound, and "a court cannot insulate the review of counsel's performance by [simply] calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. Therefore, counsel may be found ineffective with regard to a strategic decision if the strategy employed was not a sound or reasonable one. *People v Dalessandro*, 165 Mich App 569, 577-578; 419 NW2d 609 (1988). Counsel can be ineffective for failing to request an instruction if the instruction pertains to a basic and controlling issue in the case. *People v Ortiz*, 249 Mich App 297, 311-312; 642 NW2d 417 (2001).

Although defendant testified that he acted in self-defense, the law did not support a claim of self-defense at the time of trial. Defendant apparently does not dispute that he used deadly force. He contends that he was "justified in possessing and using" his knife in self-defense because Edward and his friends presented a threat of serious harm. Under the common law, "[t]he necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat." *People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002) (footnote omitted). This is because if an attack can be safely avoided, the use of deadly force is not necessary. *Id*. at 129. Because defendant was in a public place and could have retreated back inside the lounge, he could not have utilized the common-law defense of self-defense.

The Self-Defense Act (SDA), MCL 780.971 *et seq*., modified the common-law duty to retreat. Under the SDA, a person may use deadly force "with no duty to retreat" if he (a) is not engaged in the commission of a crime, (b) is in a place he has the legal right to be, and (c) "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself . . . ." MCL 780.972(1)(a).

While the SDA does not impose any duty to retreat, it does require that the defendant not be engaged in the commission of a crime. Here, defendant was engaged in the commission of a crime: he had a pocketknife concealed on or about his person, which was used as a dangerous weapon (CCW), MCL 750.227(1). While the SDA "does not diminish an individual's right to use deadly force . . . in self-defense . . . as provided by the common law of this state in existence on October 1, 2006," MCL 780.974, this Court had long ago rejected self-defense as a defense to CCW. *People v Townsel*, 13 Mich App 600, 601; 164 NW2d 776 (1968).

When the crime was committed, the common-law defense of self-defense had been recognized as a legitimate defense to the charge of felon in possession of a firearm, *People v Dupree*, 486 Mich 693, 712; 788 NW2d 399 (2010), and as of the time of trial, *Dupree* had been extended to a claim of self-defense under the SDA, *People v Guajardo*, 300 Mich App 26, 40; 832 NW2d 409 (2013), but those cases had not been extended to other possessory offenses such

-4-

as CCW.[3]  Because defendant did not have a legally viable claim of self-defense, Kaplan was not ineffective for failing to request an instruction thereon.  "Trial counsel's failure to request an instruction inapplicable to the facts at bar does not constitute ineffective assistance of counsel." *People v Truong (After Remand)*, 218 Mich App 325, 341; 553 NW2d 692 (1996).  Further, while Kaplan could have argued for an extension of the law to CCW, which would in turn warrant an instruction on self-defense, "defense counsel's performance cannot be deemed deficient for failing to advance a novel legal argument." *People v Reed*, 453 Mich 685, 695; 556 NW2d 858 (1996) (footnote omitted).  Therefore, Kaplan was not ineffective for failing to request a self-defense instruction that was not available at the time of trial.

Defendant also argues that Kaplan was ineffective because he failed to raise the fact that Legghio had a conflict of interest, and failed to move to preclude Allie from testifying or to disqualify the prosecutor due to that conflict of interest.  The record shows that defendant consulted Legghio on one occasion several months before trial, but did not retain him.  Defendant contends that Legghio later represented Allie and secured a grant of immunity for her in exchange for her testimony, and that the rules against conflicts of interest prevented Legghio from representing Allie after having consulted with defendant and this fact should have been brought to the trial court's attention.

An issue of counsel's conflict of interest implicates a defendant's right to the effective assistance of counsel.  *Cuyler v Sullivan*, 446 US 335, 349-350; 100 S Ct 1708; 64 L Ed 2d 333 (1980).  "In order to establish a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."  If such a showing is made, the defendant "need not demonstrate prejudice in order to obtain relief." *Id*. at 349-350.

At the time Legghio consulted with defendant, he did not have a conflict of interest.  Legghio allegedly had a conflict of interest at the time he represented Allie, but he did not represent defendant at that time; defendant was represented by Kaplan.  In fact, Legghio never represented defendant.  Even a case suggesting that a conflict of interest could arise from the fact that defense counsel was consulted but not retained by a witness involved a situation in which the defendant was represented by the lawyer who had been consulted by the witness. *Freund v Butterworth*, 165 F3d 839, 856 (CA 11, 1999) (alleged conflict of interest where defense counsel's firm was previously consulted by a res gestae witness regarding an unrelated matter).  Further, defendant has not shown that Legghio's alleged conflict of interest adversely affected Kaplan's performance such that Kaplan was rendered ineffective.

Defendant contends that Kaplan was ineffective for failing to raise Legghio's conflict of interest because Legghio arranged for Allie to testify against defendant regarding "suspected witness tampering," i.e., the phony-affidavit scheme, in exchange for immunity, which "had

---

[3] In fact, as recently as last year, this Court declined to extend *Dupree* to a charge of CCW, *People v Triplett*, 309 Mich App 252, 254-255; 870 NW2d 333 (2015), and it was not until this year that the Supreme Court recognized the common-law defense of self-defense as a defense to CCW.  *People v Triplett*, ___ Mich ___; ___ NW2d ___ (2016) (Docket No. 151434).

devastating consequences for Mr. Bahoda's defense" such that Kaplan should have moved to exclude "Allie's harmful testimony." The only harmful testimony Allie could have offered is that defendant was involved in the false affidavit scheme. But Allie never offered such testimony at trial and her actual testimony was consistent with defendant's own testimony that he was at the restaurant, went to the lounge, and later went home. Therefore, the alleged conflict of interest that resulted in Allie testifying for the prosecution did not prejudice defendant.

Defendant contends that through investigation of the false affidavit scheme, the prosecutor secured Allie's cooperation and threatened to reveal the scheme at trial and file additional charges against defendant "unless he limited his trial defense." This claim is not supported by the record. When the affidavits were first presented, the trial court and Berg both agreed that they would be admissible at trial for impeachment purposes, while the prosecutor argued that they were admissible as substantive evidence as well. Later, both defendant and his attorney moved to exclude the evidence. Counsel's motion was denied before trial. At trial, Kaplan advised the court that "in light of our defense," the evidentiary hearing was not necessary. He later stated that "in light of our defense in this case, the prosecution will not be introducing evidence regarding the alleged witness tampering and intimidation." The prosecutor added, "I think we had made a record last Thursday at the final pretrial and that the statements by the defense are still accurate today, and it's going to be . . . yes, I did it. It's just the level of intent that they're attacking rather than who did." At best, this suggests that the parties may have had an agreement that the prosecution would not introduce evidence regarding the false affidavit scheme and implicate defendant in that scheme if defendant did not use the affidavits to impeach the prosecution's witnesses regarding their identification of defendant, not that the prosecution somehow forced defendant to give up his defense of misidentification.

Further, defendant was not precluded from presenting a misidentification defense. It appears, however, that the only evidence of misidentification was the false affidavits. Apart from the fact that it was defendant himself who sought to exclude the affidavits because he denied any complicity in the scheme, Kaplan could not have used them to support a misidentification defense because it was undisputed that they were false. Counsel's "duty to advocate the defendant's cause . . . is limited to legitimate, lawful conduct"; counsel may not assist the defendant "in presenting false evidence or otherwise violating the law." *Nix v Whiteside*, 475 US 157, 166: 106 S Ct 988; 89 L Ed 2d 123 (1986).

To the extent defendant contends that Kaplan was ineffective for failing to present a misidentification defense, that argument also fails. As noted, defense counsel's duty is to investigate all potentially viable defenses and to present all substantial defenses, *Shahideh*, 277 Mich App at 118, and although a defendant "may advance inconsistent claims and defenses," *People v Cross*, 187 Mich App 204, 205-206; 466 NW2d 368 (1991), the decision to argue one defense over another is considered a matter of trial strategy. *People v Hedelsky*, 162 Mich App 382, 387; 412 NW2d 746 (1987). Thus, counsel's decision to present one defense rather than two inconsistent defenses constitutes reasonable trial strategy. *People v Vaughn*, 128 Mich App 270, 274; 340 NW2d 310 (1983). While the gist of the misidentification defense is not clear, defendant ultimately testified that he was at the lounge and fought with Edward, which contradicts any claim that he was not there or was there but was not involved in the fight. Thus, it was not unreasonable for counsel to argue the single defense that defendant did assault Edward, but lacked the requisite intent to commit murder or inflict great bodily harm. *Id*.

Finally, defendant contends that Kaplan was ineffective for failing to move to disqualify the assistant prosecutor, if not the prosecutor's office as a whole, based on Legghio's alleged conflict of interest. As discussed earlier, Legghio did not have a conflict of interest that implicated defendant's right to the effective assistance of counsel because there was no conflict of interest when he consulted with defendant, and he did not represent defendant when the alleged conflict of interest arose. Further, it is the prosecutor or the prosecutor's office that must have a conflict of interest to warrant disqualification, as where the defendant is a former client of the prosecutor, *People v Doyle*, 159 Mich App 632, 641; 406 NW2d 893 (1987), mod on rehearing 161 Mich App 743; 411 NW2d 730 (1987), or where the "defendant's former defense counsel joins the prosecutor's office that is pursuing the case against the defendant." *People v Davenport*, 483 Mich 906, 906; 762 NW2d 163 (2009). Because that is not what happened here, Kaplan had no basis for moving to disqualify the prosecutor or his office. "[D]efense counsel is not ineffective for failing to pursue a futile motion." *People v Brown,* 279 Mich App 116, 142; 755 NW2d 664 (2008).

## C. APPELLATE COUNSEL

As noted, the parties had initially agreed to a *Ginther* hearing on counsel's motion for a new trial. The hearing was delayed for more than a year because several attorneys appointed to represent defendant on appeal were allowed to withdraw. By the time the matter came before the trial court, appellate counsel asked that the court rule on the basis of the briefs alone. The parties ultimately agreed to have the trial court determine whether a hearing was necessary to resolve the issues raised in the motions, and the trial court determined that they lacked merit, and tacitly concluded that a *Ginther* hearing was not necessary. And, because defendant's claims of ineffective assistance of counsel lack merit, further factual development of the record was unnecessary. Therefore, the trial court did not abuse its discretion in declining to hold an evidentiary hearing, *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008), and appellate counsel was not ineffective for failing to demand a hearing.

## III. SENTENCING ISSUES

Defendant raises two sentencing issues. First, he argues that he was sentenced on the basis of inaccurate information, or the trial court misapprehended the law, because the trial court erroneously believed that defendant would be required to serve a lesser sentence, of approximately two to four years, on his prior conviction. We reject this argument because there is nothing in the record to suggest that the trial court considered how much time defendant would serve on his prior conviction when passing sentence. Instead, that issue was only discussed in the context of a possible plea before trial. Additionally, both defendant and his attorney advised the court that defendant may not be required to complete his life sentence and "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence." *People v Griffin,* 235 Mich App 27, 46; 597 NW2d 176 (1999). Most significantly, defendant and his attorney disagreed on how much time defendant would have to serve on his life sentence and, at the end of the discussion, the trial court recognized that defendant was going back to prison for the parole violation even though it did not know how long defendant would serve for that violation. At sentencing, the court sentenced defendant for assault with intent to do great bodily harm conviction, without any comment on how much time defendant would be required to serve for his parole sentence. Therefore, defendant has not shown a right to relief on this ground.

Second, defendant argues that his sentence was based on impermissible judicial fact-finding, contrary to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). The trial court addressed and decided this issue when considering defendant's post-sentencing motion. Therefore, we consider this issue preserved. *People v Stokes*, 312 Mich App 181, 192, 198; 877 NW2d 752 (2015).

The core holding of *Lockridge* is that the sentencing guidelines are unconstitutional to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables . . . that *mandatorily* increase the floor of the guidelines minimum sentence range[.]" *Lockridge*, 498 Mich at 364. To remedy this constitutional violation, the Court severed MCL 769.34(2) to the extent that it makes the guidelines mandatory. *Id.* at 391. Although the guidelines are no longer mandatory, "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion" and thus the trial court must still score the guidelines and "consult the applicable guidelines range and take it into account when imposing a sentence." *Id.* at 391-392.

We agree that defendant's 10-point score for OV 3, "bodily injury requiring medical treatment occurred to a victim," MCL 777.33(1)(d), was based on judicial fact-finding because defendant's conviction of assault with intent to do great bodily harm less than murder did not require the jury to find either that defendant actually caused bodily injury, see *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2013), or that any injury sustained by the victim necessitated medical treatment, and these facts also were not admitted by defendant. Further, but for judicial fact-finding in scoring OV 3, defendant would be in OV Level III (25 to 35 points), instead of OV Level IV (35 - 49 points), and his sentencing guidelines range would be 10 to 23 months (or 10 to 28 months as a second-offense habitual offender), instead of 19 to 38 months (or 19 to 47 months as a second-offense habitual offender). MCL 777.21(3)(a); MCL 777.65. Because the trial court sentenced defendant before *Lockridge* was decided, when application of the guidelines was mandatory, and judicial fact-finding in the scoring of OV 3 increased the floor of defendant's sentencing guidelines range, defendant has shown a Sixth Amendment violation. However, we conclude that defendant is not entitled to appellate relief.

The remedy for a *Lockridge* violation is to remand the case to the trial court to determine whether it would have imposed a materially different sentence but for the constitutional error (i.e., whether the court would have imposed a different sentence knowing that the guidelines are advisory, and not mandatory). *Lockridge*, 498 Mich at 395-398; *Stokes*, 312 Mich App at 198-199. In this case, that determination has already been made. The trial court had the opportunity to reconsider its sentence when deciding defendant's post-sentencing motion, which was heard after *Lockridge* was decided. The court noted that "defendant's sentence in this matter was calculated on the basis of offense variables calculated in violation of the Sixth Amendment pursuant to the holding in *Lockridge*." It concluded, however, that "[n]otwithstanding the fact that the guidelines were advisory, the Court finds that the sentence suggested by the guidelines was reasonable," and it stated that "even if the Court had recognized the guidelines as advisory only at the time it imposed defendant's sentence, the Court would nevertheless have rendered the same sentence in this case." Because the trial court has already re-evaluated defendant's sentence in light of *Lockridge* and determined that it would not have imposed a different sentence if it had known that the guidelines were only advisory, and not mandatory, defendant is not entitled to any additional relief.

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Deborah A. Servitto